## WRIGHT *v.* MORGAN.

### ERROR TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 13.  Argued October 13, 14, 1903.—Decided October 26, 1903.

An act of Congress entitled "An act to enable the City of Denver to purchase certain lands for a cemetery" authorized the mayor to enter the lands at a minimum price "to be held and used for a burial place for said city and vicinity." A patent was issued conveying the land to the "mayor in trust for said city and to his successors" which was confirmed by a later act. The Catholic Bishop of Denver petitioned the common council for a conveyance of a part of the land to him and his successors on the ground that it had been bought by him and used as a burial place. The petition was granted and the mayor made a deed in the name of the city, the grantee being described as Bishop of Colorado, *habendum* to him and his heirs. Subsequently the bishop conveyed a part of the land so conveyed to him which had not been used for burial purposes to defendant's predecessor in title. A later mayor brought ejectment for this part.

*Held,* that the title was not in the plaintiff.

*Semble,* that the title was in the city, that it had power to convey the land and that the deed executed was sufficient so far as the question was open.

THE case is stated in the opinion of the court.

*Mr. Halsted L. Ritter* and *Mr. Frederick A. Williams* for plaintiff in error.

*Mr. Willard Teller* and *Mr. Clayton C. Dorsey* for defendants in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action of ejectment brought in the Colorado state court and removed to the Circuit Court of the United States. The case was tried in the latter court and a verdict and judgment were ordered for the plaintiff on the undisputed facts. On exceptions a judgment was ordered for the defendants by the Circuit Court of Appeals, 106 Fed. Rep. 452, see 79 Fed. Rep. 577, and the case was brought here by writ of error. The defendants claim title under a sale by the city of Denver and a deed executed by the mayor of the city. The plaintiff contends that the act of Congress under which the original patent was granted made the land inalienable, that the patent did not give the city a legal title, that the city had no power to convey, that the alleged authority of the city to the mayor to execute the deed was insufficient, and that the deed did not follow the resolution upon which the defendants rely.

The act of Congress, approved May 21, 1872, c. 187, 17 Stat. 140, was entitled "An act to enable the city of Denver to purchase certain lands in Colorado for a cemetery," and it authorized the mayor of the city to enter, at the minimum price, certain lands, including the land in question, "to be held and used for a burial place for said city and vicinity." The price was paid and a patent was issued purporting to convey to the "mayor in trust for said city and to his successors" the said land, not referring to the above act otherwise than by the words "in conformity with the several acts of Congress in such case made and provided." This patent was confirmed by an act of Congress approved January 25, 1890, c. 3, 26 Stat. 2, and the city of Denver was authorized "to vacate the use of the said land, or any portion thereof, as a cemetery, and to appropriate and use the same or any part thereof for a public park or grounds."

After the passage of the first act, Joseph P. Macheboeuf, the Roman Catholic bishop of Denver, made a petition to the mayor and common council of Denver, representing that in 1863 he had purchased a part of the said lands, and that the same had been and was used as a burial place, and asking for a conveyance to him and his successors in office. A committee recommended that the petition be granted, and the council voted to adopt the report. On February 6, 1874, for a stipulated price which was received, a deed was executed by the mayor in the name of the city to Macheboeuf, described as bishop of Colorado, habendum to him, his heirs and assigns, "for the purposes aforesaid." The land in controversy is a part of the land embraced in this deed, and, never having been used for burial, was conveyed by Macheboeuf to the defendants' predecessor in title.

On the foregoing facts it is sufficiently evident that the plaintiff has no title, and that would be enough to show that the judgment must be affirmed. The action is brought by the present mayor in his own name, not by the city. Furthermore, it also is plain enough that the city did get a title by the patent. The first act of Congress contemplated a purchase by the city, and the patent was to the mayor in trust for the city. This trust was executed by the statute of uses. The second act recites that the city has received and paid for a patent. It is argued that the words in the first act, "to be held and used for a burial place for said city and vicinity," show a trust more extensive than the city, and therefore prevent the execution of the use. But these words are not in the patent, and if they had any effect only would impose a trust upon the city, they would not prevent the operation of the habendum in the deed. It is suggested that the answer admits that the title was in the mayor until the conveyance by the city. But this is a mere conclusion of law. The answer sets up the facts in full, and it is apparent that no point was made on the pleadings below. On the contrary, it is said, and is not denied, that after a decision to that effect on de-

murrer, 79 Fed. Rep. 577, it was admitted by the plaintiff that the legal title vested in the city by virtue of the patent of the United States.

If the legal title was in the city it was an absolute title. In view of the extreme unwillingness of courts to admit the existence of a common law condition, even when the word condition is used, it needs no argument to show that there was no condition or limitation here. *Stuart* v. *Easton*, 170 U. S. 383. Little more needs to be said to show that the act of Congress did not make the land inalienable at common law. We need not consider whether the act could have that effect upon land within a State, when the conveyance was absolute and was made to a citizen or instrumentality of the State; we express no opinion upon the point. It is enough that it did not purport so to restrict the ordinary incidents of title. We should require the clearest expression of such an unusual restriction before we should admit that it was imposed, especially in an ordinary sale for cash. Here the act probably meant no more than to explain the motive for a sale at the minimum price. *Board of Commissioners of Mahoning County* v. *Young*, 59 Fed. Rep. 96. The ratified patent said nothing of any restriction or even any trust beyond the one executed in the city. Of course, however, no question of trust is before us. If the city had found it more convenient to convey the land to a cemetery corporation, there is nothing in the statutes or patent which would have prevented it. The conveyance to the bishop was essentially similar to the case supposed, except in technical form, and probably was made on grounds of justice that very possibly were considered by Congress. The Catholics had spent money on the land and had used it for a burial ground long before Congress passed the act.

If the city got a fee simple absolute, as in our opinion it did, we are not called upon to spend time on the question of its power under the laws of the State or of its action in the premises. These questions were not much argued here. The city had a general power of alienation by charter, and we are not

prepared to say that the power did not extend to burying grounds. The vote to adopt the report was a sufficient vote to sell, and the question is not open whether there was any informality in the execution of the sale by the mayor rather than by a special commissioner. The supposed error would be corrected by equity if necessary. After the price had been received by the city and the land had been occupied by purchasers for nearly twenty years, the city would not now be allowed to profit by a merely technical mistake.

The objection that the deed did not follow the authority is unfounded. Giving Machebœuf a wrong title had no effect on the grant, and the habendum properly was to him and his heirs, notwithstanding the petition and the intent that the title should follow the office and not the blood of the grantee. Apart from statute the law does not recognize the bishop as a corporation sole, and therefore the land could not be limited to him and his successors. At all events, it was sufficient to give the bishop a fee by the proper words and to leave the official succession to the title to be effected by other means than the limitation in the deed. The petition of Machebœuf no doubt contemplated that he would take the land for the benefit of his church, and no doubt he did so in fact. But there was nothing which required this intention to be expressed in the deed.—The plaintiff is not concerned with the extent of Machebœuf's power to convey to secular uses.

*Judgment of the Circuit Court of Appeals affirmed.*