## MICKLESON v. GYPSY OIL CO. et al.

No. 11434—Opinion Filed Feb. 3, 1925.

Rehearing Denied May 19, 1925.

**1. Oil and Gas—Conveyances—Conditions Subsequent.**

Mere words, though they be the strongest of words, will not entail a forefeiture of the estate, unless it appears that this was the distinct intention of the grantor, and the necessary understanding of the parties to the instrument. The intention of the parties as gathered from the whole conveyance, rather than the technical words, controls.

**2. Same—Covenant Distinguished—Provision in Assignment of Leasehold that Assignor Have All Drilling.**

An assignment of oil and gas leaseholds setting forth language providing for the giving of all of the drilling upon the premises to the assignor, and providing further that the assignment is made upon the express condition that the assignor shall have all of such drilling, does not create a condition subsequent, but is a covenant. In cases of doubt as to whether a clause is a covenant or a condition subsequent, the courts will incline against the latter construction and will resolve the doubt in favor of a covenant.

**3. Same—Binding Effect of Covenant — Failure of Assignee to Sign.**

Assignment of oil and gas leaseholds containing a provision which provides a covenant to give all of assignee's drilling on premises, held binding on assignee. Where the assignor executed an assignment of oil and gas mining leases to assignee on the usual form, except that said assignment contains a covenant requiring assignee to give assignor the contracts for all drilling on the premises, and such assignment is accepted by the assignee, said covenant is fully binding on the assignee, although the assignee did not sign the assignment.

**4. Same.**

Assignment examined and held to be a covenant, and not a condition subsequent. M. assigned oil and gas mining leaseholds covering 320 acres of land to G. Oil Company by assignment on usual form, except for the following unusual provision, to wit: "It is further agreed, and this assignment is made upon the express condition that I, D. D. Mickleson, am to have all the drilling for oil and gas to be done by the Gypsy Oil Company, its successors or assigns, upon the premises covered by the leases herein assigned by me, said drilling to be done at average prices, that are being paid for such work by the Prairie Oil & Gas Company, the Producers Oil Company, and other good and substantial oil and gas companies, so long as I do the drilling in a good workmanlike manner." Held, that the foregoing provision, upon the acceptance of the assignment by the assignee, bound the assignee (a) to give all of its drilling on said premises to M.; (b) to pay for said drilling at average prices paid for such work by other good and substantial oil companies. Held, further that said assignment bound M. to do said drilling in a good workmanlike manner. Held, that said stipulation creates a covenant and that the qualifying words "upon express condition," considered with all of the language of said provision, are not sufficient to create a condition subsequent.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from Dstrict Court, Pawnee County; Owen Owen, Judge.

Action by D. D. Mickleson against Gypsy Oil Company. From the judgment, Mickleson appeals. Affirmed, and remanded with directions.

H. B. Martin and R. A. Reynolds, for plaintiff in error.

Rush Greenslade, James B. Diggs, and William C. Liedtke, for defendants in error.

Opinion by LYONS, C.　Mickleson sued the Gypsy Oil Company in equity for the cancellation of an assignment of an oil and gas leasehold held by the defendant, and for the quieting of its title.　Plaintiff sold certain oil and gas mining leaseholds covering 320 acres of land in Pawnee county, Okla., to the Gypsy Oil Company, and conveyed by an assignment containing the extraordinary and unusual provision:

"It is further agreed, and this assignment is made upon the express condition that I, the said D. D. Mickleson, am to have all the drilling for oil or gas to be done by the Gypsy Oil Company, its successors or assigns, upon the premises covered by the lease herein assigned by me, said drilling to be done at average prices that are being paid for such work by the Prairie Oil and Gas Company, the Producers Oil Company, and other good and substantial oil and gas companies, so long as I do the drilling in a good workmanlike manner."

It is alleged that the leases at the date of the sale were worth $50,000, that Mickleson sold for a cash consideration of $11,226.60; that the plaintiff was a drilling contractor and was anxious to build up his business, and for that reason the foregoing provision was inserted in the assignment evidencing the agreement of the parties.

It is further alleged that the Gypsy Oil Company drilled 15 wells on the premises, that the drilling of 14 of these wells was let to Mickleson in pursuance of the terms of the foregoing provision.　That in the month of May, 1916, the Gypsy Oil Company disregarded said agreement and gave a drilling contract for the drilling of one well on said premises to a drilling contractor other than the plaintiff.　That this alleged breach was discovered by plaintiff on January 1, 1919, and that thereupon he made a demand upon the Gypsy Oil Company for the possession of the premises and reconveyance of the leasehold estate.　This demand was refused.

It is further alleged that the Gypsy Oil Company has been actively engaged in operating the lands for oil and gas, is still producing therefrom oil and gas in large quantities and of great value, that the company has expended large sums of money in its operations and development, but that it has produced and saved from the premises $500,000 in excess of the entire cost and expense of the acquisition and operation of said lease.

Upon the coming on to be heard by the district court of the demurrer interposed to the petition, a special submission of the case was made on said demurrer, and upon the stipulation of the plaintiff and Gypsy Oil Company, the cause was submitted to the court on the demurrer for determination as to whether the second amended petition states facts sufficient to show the plaintiff to be entitled to a judgment decreeing that the assignment set up in the second amended petition was upon a condition subsequent which has been violated by the defendant, and that the facts stated in the second amended petition entitle the plaintiff to have his claim of title to the land described in the second amended petition quieted.

It will be seen that the parties, by agreement, withdrew from the consideration of the court the question as to whether the plaintiff might be awarded money damages or compensation for the failure of the company to award him the contract for the fifteenth well.　The trial court sustained the demurrer upon this special submission, and from the order sustaining the demurrer, the plaintiff, having elected to stand on his second amended petition, appeals.

Two errors are alleged:　First, that the court erred in its construction of the provision of the assignment hereinbefore set out; second, that the court erred in striking from the first amended petition certain allegations relative to the negotiations between the parties prior to the consummation of the contract.　The principal assignment of error and the one which requires close examination is the contention as to the interpretation of the clause of the assignment hereinbefore quoted.

Able and exhaustive briefs have been filed by eminent counsel, and the court has been further favored by oral arguments which evidenced a wealth of knowledge and a commendable zeal to assist the court in determining this important and complicated question.

It is earnestly contended by the appellant:

(a) That the words used, to wit, "Upon express condition" are the apt words set forth in all treatises on conveyances throughout the course of centuries to create a condition subsequent.

(b) That the provision cannnot be construed as a covenant for the reason that there is no binding obligation in the language which obligates the assignee to do any drilling or hence to give Mickleson any contract of any kind whatsoever.

(c) That the language cannot be construed as a contractual obligation or covenant for the reason that the Gypsy Oil Company never signed the assignment, and for the further reason that, so construed, such provision would be within the statute of frauds.

In support of contention "a" the appellant cites Jones on Real property section 626; 6 Am. & Eng. Ency. 500; Volmue 1, Words and Phrases, page 865; 4 Elliott on Contracts, page 1089; Michigan State Bank v. Hastings, 41 Am. Dec. 549; Adams v. Ore Knob Copper Co., 7 Fed. 635; 1 Bouvier's Law Dictionary, page 583; Sioux City & St. P. R. Co. v. Singer, 49 Minn. 301; Nicoll v. New York & Erie Ry. Co., 12 N. Y. 121; O'Brien v. Weatherall, 27 Pa. 467.

We quote from other authorities cited by appellant, as follows:

Plumb v. Tubbs, 41 N. Y. 442:

"After the habendum is the condition; 'Provided always and this indenture is made upon condition that the said party of the second part, his heirs or assignors shall not at any time manufacture or sell, to be used as a beverage, any intoxicating liquor, or permit the same to be done on the premises hereby conveyed, unless the said Joseph Plumb, his heirs or assigns, shall sell other land at the village of Cattaragus without a similar restriction or shall manufacture or sell such liquor, to be used as a beverage at the said village, or permit the same to be done on any other land now owned by the said Joseph Plumb at the said village." Held: The above created a condition subsequent."

Mead v. Ballard, 19 L. Ed. 191:

"The land for the recovery of which this action in ejectment was brought was conveyed for a full consideration by plaintiff's ancestor on the 7th day of September, 1847. The deed contained the usual covenants of warranty and also a condition expressed in the following words: 'Said land being conveyed upon the express understanding and condition that the Lawrence Institute of Wisconsin, chartered by the Legislature of said territory, shall be permanently located upon said land, and the failure of such location being made on or before September 7, 1848, and on repayment of the purchase money with interest, the said land shall revert and become the property of said grantors.' The plaintiff who sues as heir at law of the grantors maintained that this is a condition subsequent which has not been performed and having tendered the money received by them, he now claims the right to recover the land. It must be conceded that the language recited amounts to a condition subsequent and as no point was made in the trial as to the sufficiency of the tender, the only question then before us is whether the condition, has been performed."

Papst v. Hamilton (Cal.) 66 Pac. 10:

"Upon the condition, however, that the premises shall be used solely for the purpose of erecting, furnishing, keeping and maintaining thereon an academy or college school," etc.

As to the effect of this language, the court said:

"The language used, both in its technical and popular sense 'ex proprio vigore' imports a condition or intent of the grantor to make a conditional estate."

Victoria Hospital Association v. All Persons, Etc., (Cal.) 147 Pac. 124:

"It is, of course, a familiar principle that such conditions are not favored in law because they tend to destroy estates and that no provision in a deed relied on to create a condition subsequent will be so interpreted if the language of the provision will bear any other reasonable construction. As said in Hawley v. Cafitz, 149 Cal. 395, 83 Pac. 249, 'There must be language used which is so clear as to leave no doubt that the grantor intended that his estate upon condition subsequent should be created; language which ex proprio vigore imports such a condition.' It has, however, many times been held that it is not essential to the creation of a condition subsequent that a forfeiture clause shall be inserted, such as that a failure to comply with said condition will render this conveyance null and void and said premises shall revert to the party of the first part (citing authorities), though some such clause would appear to be extremely desirable and in some cases absolutely necessary for the purpose of showing clearly and unmistakably the intention of the grantor. * * * It is true that the words 'on condition that' are apt and proper words both in their technical and popular sense to create a condition, and it appears to be the generally accepted doctrine that as the words 'on condition' are the precise and technical terms by which an estate on condition is created, such a phrase is sufficient to create a conditional estate unless there is something else in the deed indicating the contrary. As said in Guild v. Richards, 16 Gray (Mass.) 309; 'In such cases, to use the quaint language of the books, without any more saying, the feofe hath an estate upon condition.' * * * This is the accepted doctrine of this court and such words ex proprio vigore import such condition in the absence of other language inconsistent therewith, but it has

never been held here, and we do not understand it to be the rule elsewhere, that simply because these words are used we necessarily have an estate on condition. It may freely be conceded that with such words we have such an estate unless upon consideration of the whole deed a different intent is indicated."

Sanderson v. Dee, 67 Okla. 72, 168 Pac. 1001:

"Where a condition subsequent is raised by apt and sufficient words the estate conveyed remains defeasible until the condition be performed, destroyed, or barred by the statute of limitations, or by estoppel."

Ross v. Sanderson, 63 Okla. 73, 162 Pac. 709:

* * * The rule seems to be that, where there are express words in a deed which of themselves make a condition subsequent, there is no use of a clause reserving a right of reentry for breach thereof in order to enable the grantor to avail himself of a forfeiture.

"It is true that conditions subsequent working a forfeiture of the estate conveyed should be strictly construed as such conditions are not favored by law or equity. But, notwithstanding its abhorrence of forfeitures, a court of equity will take jurisdiction not to declare a forfeiture, but to quiet a title already forfeited for nonperformance of a condition subsequent, when the plain language of the instrument shows that it was the purpose of the parties to declare that a breach should operate as a forfeiture."

The appellant also cites us to the general rule announced in 8 Ruling Case Law, page 1100, section 58, as follows:

"The legal responsibility of nonfulfillment of a covenant is that the party violating it must respond in damages. The legal consequence of a nonfulfillment of a condition is the forfeiture of the estate. When the language is plain and clear, whether the clause creates a condition subsequent or a mere personal covenant, is a matter of pure legal interpretation for the court, and if the intention of the parties is so clearly expressed as to show that the enjoyment of the estate created by the deed was intended to depend on the performance of a certain stipulation, a condition and not a covenant will be declared."

This question is also fully considered in Clapp v. Wilder (Mass.) 57 N. E. 692 where the deed in question contained the following provision:

"And this conveyance is made upon the express condition that said Wilder and Hills, their heirs and assigns, shall never erect any bulding nearer the street than the store building thereon."

In construing this clause the court in an opinion by Mr. Justice Hammond, said:

"The language is 'upon the express condition,' an emphatic form of the expression 'on condition.' Whatever may be the force of this language in a will, there can be no doubt of its usual meaning in a deed. The phrase 'sub conditions,' or 'on condition' is one of the three phrases by which, without more, a conditional estate can be created. It is the first one named by Littleton, and Coke says of it: 'This is the most expressed and proper condition in deed and therefore our author beginneth with it.' Co-Litt. 203 A. Rawson v. School District, 7 Allen, 125, and authorities cited. In the deed before us it applies to one single thing perfectly plain and simple. The common law as to the creation of conditional estate has always been considered part of our common law. If we are to have such estates it is important that there should be the least possible uncertainty as to the form of the language to be used in creating them and when we find in a deed an unjustified form of the phrase which from the earliest times has been regarded 'as the most express and proper legal purpose, namely, to create such estate, it is to be presumed in the absence of anything appearing in the deed to the contrary, that the phrase is used for its proper legal jurpose, namely, to create such an estate and that such an estate is thereby created. No doubt there is a disposition among courts to look for something in the deed which shall modify the severity of the language and sometimes considerable astuteness has been exercised in this direction. Post v. Weil, 115 N. Y. 361, 22 N. E. 145.

"* * * As stated by Justice Parks in Gray v. Blanchard, 8 Pick. 284: 'The words "this conveyance is upon condition," can mean nothing more or less than their natural import. * * * It would be quite as well to say that the words mean nothing and so ought to be rejected altogether.' "

In Sanitary District of Chicago v. Chicago Title & Trust Co. (Ill.) 116 N. E. 161, the deed under consideration contained the following provision: "This deed is made on express condition," etc., together with a clause expressly providing for a forfeiture, etc. The court was called upon to decide whether the same was a condition subsequent or a mere covenant, and in the opinion of the court the following language was used:

"In the present case, however, there was no covenant or agreement on the part of the grantee to do anything. The grant was on condition that the grantee should do several things, though the instrument contained no agreement to do them. * * * The appellee had a right to make a conveyance on such lawful terms as he saw fit and both par-

ties have the right to have it enforced according to its terms."

The leading case on this subject in the Supreme Court of the United States, cited by appellant, is Hale v. Finch, 104 U. S 261, 26 L. Ed. 732. The instrument involved therein was a bill of sale which is as follows:

"On the 18th day of February, 1867, the Oregon Steamship Company sold the New World to Henry Windsor, Clamick Crosby, Jr., and Calvin H. Hale, executing to Windsor a bill of sale which stated the consideration to be $75,000. This instrument contained the following provisions: That I, the said Calvin H. Hale, do by these presents covenant and agree for myself, my heirs, executors and administrators, to and with the said Duncan B. Finch, his heirs, executors, administrators, and assigns, to warrant and defend the whole of said steamboat, New World, her engines, boilers, machinery and all the other before mentioned appurtenances, against all and every persons whomsoever; and it is understood and agreed that this sale is upon the express condition that said steamboat or vessel is not within 10 years from the first day of May, 1867, to be run upon any of the routes of travel on the rivers, bays or waters of the state of California, or the Columbia river or its tributaries, and during the whole period last aforesaid the machinery of said steamboat shall not be run or be employed in running any steamboat or vessel or craft upon any of the routes of travel on the rivers, bays or waters of the state of California or Columbia river or its tributaries."

The terms of this bill were breached by the vendee, and the vendor filed an action for damages on the theory that the language contained in the bill of sale amounted to a covenant.

In passing on this question in an opinion by that distinguished jurist, Mr. Justice Harlan, the court said:

"This brings us to the main contention on behalf of the plaintiffs in error, namely, that the language of the bill of sale from Hale to Finch, if interpreted in the light of all the circumstances attending its execution, imports a covenant on the part of the latter that he would not use or permit the use by others, of the steamship or its machinery within a prescribed period either upon the waters, rivers, and bays of the state of California, or upon the Columbia river and its tributaries. If, however, the language properly interpreted imports only a condition, for the breach of which the vendor had no remedy other than by suit to recover the property sold, then it is, as indeed, it must be conceded that the judgment below was right. We are of the opinion that the latter construction is the proper one.

"* * * If we omit all consideration of the circumstances under which the bill of sale from Hale to Finch was executed and look solely at the language employed in the instrument, there seems to be no ground upon which the claim of the plaintiff can stand. The words are precise and unambiguous; no room is left for construction. It is undoubtedly true, as argued by counsel, that neither express words of covenant, nor any particular technical words, nor any special form of words, are necessary in order to charge a party with covenant."

"* * * But according to the authorities, including some of the above cited, and from the reason and sense of the thing, a covenant will not arise unless it can be collected from the whole of the instrument that there was an agreement, or promise, or engagement, upon the part of the person sought to be charged, for the performance or nonperformance of some act. Comyns in his Digest (Covenant A 2 ) says that: 'Any words in a deed which show an agreement to do a thing, make a covenant," 'But,' says the same author, 'where words do amount to an agreement, covenant does not lie; as, if they are merely conditional to defeat the estate; as, a lease, provided and upon condition that the lessee collect and pay the rents of his other houses.' Com. Dig. Covenant A. 3. The language last quoted is also found in Platt's Treatise on the Law of Covenants. Applying these doctrines to the case before us, its solution is not difficult. Without stopping to consider whether a covenant upon the part of Finch could arise out of a bill of sale which he did not sign, but merely accepted from his vendor, it is sufficient to say that that instrument contains no agreement or engagement or promise by him that he would or would not do anything. There is, in terms, a covenant by Hall to Finch to defend the title to the boat and its machinery against all persons whomsoever. This is immediately followed by language implying an agreement, not that Finch would not use or permit others to use the boat and its machinery upon the prohibited waters within the period limited, but only an agreement that the sale was upon the express condition that neither the boat nor its machinery should be so used. It is the case of a bare naked condition, engagement or promise by the vendee that he would personally perform or become personally responsible for the performance of the express condition upon which the sale was made, The vendee took the property subject to the right which the law reserved to the vendor, of recovering it upon breach of the condition prescribed. The vendee was willing, as the words in their natural and ordinary sense indicate, to risk the loss of the steamboat when such breach occurred, but not to incur the personal liability which would attach to a covenant or agreement upon his part, that he would not use and would not permit others

to use the boat or its machinery upon the waters and within the period named. If this be not so then every condition in a deed or other instrument, however bald that instrument might be of language implying an agreement, could be turned, by mere construction, and against the apparent intention of the parties, into a covenant or agreement involving personal responsibility. The vendor having expressly, and the vendee impliedly, agreed that the sale was upon an express condition—stated in such form as to preclude the idea of personal responsibility upon the part of the vendee—we should give effect to their intention, thus distinctly declared."

The language used in the bill of sale in the above case is:

"And it is understood and agreed that this sale is upon the express condition that the steamboat or vessel is not within ten years from the first day of May, 1867, to be used upon any of the routes of travel on the rivers," etc.

The language used in the conveyance here under consideration is:

"It is further agreed, and this assignment is made upon the express condition, that I, the said D. D. Mickleson, am to have all the drilling for oil or gas to be done by the Gypsy Oil Company, its successors or assigns, upon the premises covered by the leases herein assigned by me. * * *"

We discern a material difference in the language of the clause considered by the Supreme Court of the United States in the case of Hale v. Finch and the language under consideration in this controversy. In Hale v. Finch what was understood and agreed was that the sale was made upon the express condition of nonuser of the steamboat on any of the routes of travel on the rivers, etc., What was agreed here was that

"I, D. D. Mickleson,—

"1. Am to have all of the drilling to be done by the Gypsy Oil Company, its successors or assigns,

"2. Upon the premises covered by the leases herein assigned:

'3. Drilling to be done at average prices paid for such work by other good and substantial oil companies,

"4. I am to do the drilling in a good workmanlike manner."

The clause further provides that the assignment is made upon the express condition of the carrying out of the foregoing.

The word "agree" is defined by the New Standard Dictionary "To be of one mind or opinion as in a particular matter; concur; consent; to give assent; to arrange; to settle."

We think, therefore, that this clause provided a stipulation as to the drilling which as we shall see hereafter was fully binding upon the Gypsy Oil Company, by reason of the acceptance of the assignment, and that the words "upon express condition" in some sense provide a penalty or forfeiture for the failure of the Gypsy Oil Company to carry out the foregoing contractual stipulation. In the steamboat case foregoing, the language admits of no conclusion save that the sale is made upon a condition subsequent. In the present case the actual words employed being "it is further agreed," and referring to the acts to be done by both parties, plainly indicate a binding contractual obligation, fully entered into by the assignee. It is the contention of the defendant as opposed to appellant's contention, that the provision under consideration must be deemed a covenant rather than a condition subsequent.

Defendant contends that sufficient apt, technical words to create a condition subsequent have not been employed and it is essential that apt language be used to create a forfeiture and provide for reentry. 6 Ruling Case Law, page 1087, section 4 lays down the rule:

"While the use of the technical words 'condition' or 'covenant' in an instrument will be given effect if consistent with the purpose of the instrument viewed in its entirety, the mere use of such words is not controlling. Hence, incidents appear where provisions have been construed as conditions or as covenants accordingly as they may be attended or unattended by provisions for a forfeiture or reversion, notwithstanding the misuse of the term 'covenant' or 'condition' as the case may be, in designating the provision in the instrument."

In 8 Ruling Case Law, page 1109, section 170, it is said:

"While no precise form of words is necessary to create a condition subsequent, still it must be created by express terms or by clear implications so as to leave no doubt of the grantor's intention. There are certain well recognized apt or appropriate words or expressions which are usually employed for the purpose of creating the condition subsequent. These technical terms generally follow the granting clause of the deed and declare that the estate conveyed is 'on express condition' and that certain things shall be done, or 'provided however,' or 'in the event that' certain terms imposed are not complied with the deed shall be void and the estate shall be terminated and forfeited. But technical words are not absolutely essential to create a condition nor, on the other hand, does their use necessarily raise one. They may be controlled by

the context of the instrument in which they are used so that sometimes they work a limitation and condition, sometimes a covenant or a trust only."

In the same volume, at page 1119, section 181, it is said:

"It is usual in the grant to reserve in express terms to the grantor and his heirs a right of entry for breach of condition, and while, if a condition subsequent has been created the right of reentry is implied, it is not dependent upon a specific recital thereof in the deed, generally the rule is stated to be that the language must also expressly or by necessary implication reserve a right of entry by the grantor, and it is sometimes declared that the mere use of the word 'condition' will not create a condition subsequent unless it plainly appears that the intention was to give the grantor a right of reentry if the grantee did not perform. So where the presence of a clause giving a right to reenter is not absolutely essential to the creation of a condition subsequent, its absence lessens the difficulty of giving a more benignant construction to the proviso clause, while its presence might make certain that which, in its absence, is left open to construction."

In Jones on Conveyancing, volume 1, section 611, the author says:

"Even the words 'upon condition' do not of necessity create an estate upon condition. Thus, in a deed of land to a religious society to use for purposes of public worship, the words 'in trust nevertheless and upon condition always' were held not to create an estate on condition, but merely on trust."

Again at section 642, the same author says:

"Mere words, though they be the strongest words of condition, will not entail a forfeiture of the estate unless it appears that this was the distinct intention of the grantor and the necessary understanding of the parties to the instrument. The intention of the parties, as gathered from the whole deed and from the surrounding circumstances, rather than technical words of condition, controls the interpretation of the deed. This rule is strongly declared by the New York Supreme Court of Appeals in the recent decisions in which Mr. Justice Gray says: 'If the only reason for construing a clause is in the technical words which have been used, the court may disregard them in performing the office of interpretation. If we can construe this clause as an obligation to abstain from doing the thing described which, by acceptance of the deed became binding upon the grantee as an agreement enforceable in behalf of any interest entitled to invoke its protection I think we are in conscience bound to give that construction, and thereby place ourselves in accord with that inclination of the law which regards

with disfavor conditions involving forfeiture of estates. In this connection it may be noted there is no clause in the deed giving the right to reenter for conditions broken. While the presence of such a clause is not essential to the creation of a condition subsequent by which an estate may be defeated at the exercise of an election by the grantor or his heirs to reenter, yet its absence to that extent frees still more the case from the difficulty of giving a more benignant construction to the proviso clause. The presence of a reentry clause might make certain that which in its absence is left open to construction. The absence of such a clause may have its significance in connection with the circumstances of the case and the intent to be fairly presumed therefrom."

Defendant further contends that the language is contractual in its nature, is definite, and has a specific and complete subject-matter readily ascertained, to wit, all of the company's drilling on the 320 acre tract. It is contended further that in case of doubt the clause must be held to be a covenant and not a condition subsequent.

In the case of Green County v. Quinlan, 211 U. S. 582, it appears that aid was extended to the railroad "upon condition that said company shall locate and construct said railroad through the said county of Green, and within one mile of the town of Greensburg in said county, and shall expend the amount so subscribed within the limits of Green county." The conditions were not complied with and it was contended that the agreement and bonds issued in pursuance thereon and containing such condition were void. In passing on this question the court, by Mr. Justice Moody, at page 594, say:

"It is not conclusive that the obligation thus imposed upon the railroad company is called a condition. It frequently has been the case that the word condition has been used in written instruments in a looser and broader sense than the law attaches to it. In ascertaining the true meaning of instruments in writing, courts do not confine their attention to single words, phrases, or sentences. The meaning is sought from the whole instrument, viewed in the light of the subject from which it deals. This general rule of interpretation often makes it manifest that that which is called a condition is really but a covenant or agreement, to be performed independently of the counter obligation with which it is associated. When such an intent is discovered the courts have no difficulty in giving it effect, though the result be to disregard the technical meaning of the word 'condition.'"

The defendant further cites Neely v. Hoskins, 84 Me. 386, 24 Atl. 882; Episcopal City Mission v. William Appleton, 117 Mass. 326,

cited with approval by the Supreme Court of Oklahoma in Fraley v. Wilkinson, 79 Okla. 21, 191 Pac. 156; Ayling v. Kramer, 133 Mass. 12; Los Angeles University v. Swarth, 107 Fed. 798; Scoville v. McMahon, 62 Conn. 373, 36 Am. St. Rep. 360; Post v. Weil, 115 N. Y. 361, 22 N. E. 145; Clement v. Burtis (N. Y.) 24 N. E. 1048, cited with approval by this court in Fraley v. Wilkinson, supra; Cassidy v. Mason (Mass.) 50 N. E. 1027; Greene v. O'Connor (R. I.) 25 Atl. 692; Woodruff v. Woodruff, 16 Atl. 4; Skinner v. Shepard, 130 Mass. 180; Palmer's Executor v. Ryan (Vt.) 22 Atl. 574; Weir v. Simmons (Wis.) 13 N. W. 873; Doescher v. Doescher (Minn.) 63 N. W. 736; Boston Safe Deposit & Trust Co. v. Thomas (Kan.) 53 Pac. 472; Ross v. Sanderson, 63 Okla. 73, 162 Pac. 709; Stanley v. Colt, 5 Wallace, 119, 18 L. Ed. 502; Paschall v. Passmore, 15 Pa. 295.

We think that the cases of Stanley v. Colt, supra, Paschal v. Passmore, supra, Post v. Well, supra, and Clements v. Burtis, supra, lay down the applicable rule, and that this rule has been adopted by this court in the Fraley Case and also in the recent decision of Priddy v. School District, 92 Okla. 254, 219 Pac. 141, in an able opinion by Commissioner Stephenson, where the following occurs:

"One cardinal principle of realty law is that conditions subsequent are not to be favored or raised by inference of implication. The law is opposed to forfeiture of estates.

"A grant of real property for a particular use without words of forfeiture does not create a condition subsequent, but is a covenant, and in cases of doubt as to whether a clause in a deed is a covenant or a condition subsequent, the courts of law will incline against the latter construction and will resolve the doubt in favor of a covenant.

"A deed will not be construed to create an estate on conditions unless the language used, by its own force, imports a condition or unless the intention of the grantor to create a condition subsequent is clearly expressed by the terms of the deed."

It is our view, when this rule of construction is applied to the foregoing provision, that it cannot be deemed a condition subsequent, but must be regarded as a covenant.

We now notice the appellant's contention that this language should not be treated as creating a covenant for the reason that the assignee is not bound. We cannot agree with the plaintiff's contention that the failure of the assignee to sign the assignment is of material importance.

In Ruling Case Law, section 90. page 729, it is said:

"On the other hand, the acceptance of a deed by the grantee named in it makes a written contract, and the obligations created by the deed are therefore evidenced by writing and are not governed by the limitation respecting verbal contracts." See also, Silver Springs O. & C. R. Co. v. Van Ness (Fla.) 34 South. 884; Parker v. Carter, 91 Ark. 162, 120 S. W. 836: Schmucker v. Sibert, 18 Kan. 104, 26 Am. St. Rep. 769; Koch v. Streuter, 232 Ill. 594, 83 N. E. 1072.

We may say in passing that the provision in this case differs materially and almost entirely from the contract considered in the case of Emery Brothers v. Mutual Benefit Oil Co., 73 Okla. 94, 175 Pac. 210, where the agreement was to give "first choice of drilling." In the Emery Brothers Case no drilling had been awarded to anyone else, and in that case the court held that the agreement was so indefinite that it was not capable of enforcement.

In the present case an examination of the clause or the provision discloses it is sufficiently certain and specific, and we are unable to see any reason why the plaintiff could not maintain his action for damages for the loss of profits which he would have made as drilling contractor on the fifteenth well.

We notice also the plaintiff's contention that if the provision is construed as a covenant that it is within the statute of frauds for the reason that it is not to be performed within one year. We think that the statute of frauds has no application to a clause of this kind since it does not affirmatively appear that by its terms it is not to be performed within one year. The general doctrine as stated in 25 Ruling Case Law, section 29, is:

"In order to bring a contract within the infra annum clause, it must appear affirmatively that it is not to be performed within one year, and it has been said that the purpose of the statute is to provide for a case in which there cannot be an actionable breach within the specified time. So it is the generally accepted rule that to bring a contract within its operation there must be an express and specific agreement not to be performed within the space of a year; if the thing may be performed within the year, it is not within the statute, a restricted construction being given to the statute on account of the negative form of the provision. A contract is not brought within the statute by the fact that the full performance within a year is highly improbable, nor by the fact that the parties may not have expected that the contract would be performed

within the year. This is said to be true if there is a possibility of its being performed within a year, and there is no stipulation that it shall not be so performed. If an agreement is capable of being performed within a year, it is not within the statute. although it be not actually performed till after that period, and after the expiration of the year it still remains binding."

We think, further, that the section of the statute of frauds under consideration applies only to agreements other than those relating to land. See Woodworth v. Franklin, 85 Okla. 27, 204 Pac. 452, and cases there cited.

We are therefore compelled to the view under the rule of construction of contracts adopted by this court, that the foregoing provision creates a covenant, that said covenant is sufficiently definite, and that the same may be enforced in an action thereon against the defendant. That the defendant is liable and can be amerced in damages for the breach thereof. Since, therefore, the trial court, on the special submission, had before it only the question as to the cancellation or the assignment and the quieting of the plaintiff's title, its decision on that point was correct.

We now notice the second assignment herein set forth, which is predicated upon the action of the trial court in striking from the first amended petition the following language:

"That in the negotiations preceding the execution of the assignment, and by which the same was finally consummated, the defendant, Gypsy Oil Company, insisted that the plaintiff accept the said sum of $11,286.60, and a contract for the drilling of all wells to be drilled on said leasehold premises by the defendant, Gypsy Oil Company, or its assigns, as the consideration for said assignment, but that said plaintiff refused to make the assignment for said leases to the defendant except on the condition that if the defendant did not give the plaintiff the drilling of all said wells, then the assignment should be null and void and the interest thereby conveyed to revert to the plaintiff, and that said parties thereupon agreed to the things contended for by plaintiff, and the assignment, a copy of which is attached hereto, was finally executed by the parties."

It is the contention of the plaintiff that this language was material to disclose the situation of the parties when the assignment was made. It is the contention of the defendant that any error of the court in striking the foregoing language was waived by taking leave to plead over and by filing a second amended petition.

It is not necessary for us to determine this precise point, since our decision on the question of the interpretation of the contract would render the consideration of these allegations useless and nugatory. Therefore no error, or at least harmless error only, appears as to this assignment.

It is apparent from what has been said that it is our view that the plaintiff cannot recover on the theory of breach of condition subsequent, and a consequent forfeiture of the estate of the defendant. It is also clear from what has been said that the plaintiff has a good cause of action for the breach of a covenant of the defendant to award him the drilling contract for the fifteenth well and all other wells to be drilled on the premises within the purview of the covenant of the assignment. Therefore the order of the trial court sustaining the demurrer upon the special submission of the cause is correct and the judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 18 C. J. p. 363: (2) 15 C. J. p. 1218, 27 Cyc p. 726; (3, 4) 27 Cyc p. 726.