STINSON et al. v. OKLAHOMA RY. CO. et al.

No. 30299.   May 26, 1942.

*126 P. 2d 260.*

Chas. H. Garnett, of Oklahoma City, for plaintiffs in error.

John Embry, M. M. Gibbens, and Calvin Boxley, all of Oklahoma City, for defendant in error Wesley Methodist Episcopal Church.

CORN, V. C. J. This is an appeal from an order sustaining the demurrer of the defendant Wesley Methodist Episcopal Church, hereafter called the church, to plaintiffs' third amended petition, and to the answer and cross-petition of the defendant Oklahoma Railway Company. Plaintiffs elected to stand upon their petition, and the trial court entered judgment for the church, dismissing plaintiffs' petition with prejudice, from which judgment they appeal.

June 9, 1904, I. M. Putnam conveyed a certain described parcel of land to the Metropolitan Railway Company by warranty deed, the pertinent portions of which recited as follows:

"That I, I. M. Putnam, a single man, party of the first part, of the City of Oklahoma City, County of Oklahoma and Territory of Oklahoma, in consideration of One ($1.00) Dollar in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto the Metropolitan Railway Company of Oklahoma City the following described real property. . . .

"This grant is made to the said Metropolitan Railway Company to be used as and for a trolley park, for a station and station grounds for its traffic and is accepted upon the agreement that the Metropolitan Railway Company will improve and beautify the same; . . ..

"To have and to hold the said described premises unto the said party of the second part, its successors and assigns for ever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and encumbrances of whatsoever nature; . . ."

June 15, 1904, the Metropolitan Railway Company conveyed all of its holdings to the Oklahoma Railway Company, including that tract which is the subject of the deed and this litigation.

Thereafter, May 24, 1920, the Oklahoma Railway Company quitclaimed this parcel of land to the church. October 1, 1924, Putnam executed a quitclaim deed to the same tract to the plaintiff Stinson. The church went into possession of the land upon receipt of its deed in 1920, and has held possession since that time.

In the original petition plaintiff Stinson sought to recover damages for the alleged wrongful use and occupancy,

ejectment, and to have the title quieted in herself. By amendment to the petition Putnam, the original grantor, was joined as a necessary party plaintiff. The amended petition set up that neither the Metropolitan Railway Company nor the Oklahoma Railway Company, its successor, ever went into possession of the land.

The matter was heard upon plaintiffs' third amended petition and the separate demurrers of the church and the railway company, and the separate answer and cross-petition of the railway company. The church's demurrer was sustained as to the petition and the answer and cross-petition of the railway company. Plaintiffs' petition was dismissed, with prejudice, and the church was adjudged to hold fee title to the premises and title thereto was quieted in the church as against both the plaintiffs and the railway company.

From this judgment plaintiffs have appealed. As grounds for reversal of this judgment, three propositions are set up. These propositions are:

"1. This deed was a voluntary grant to the railway company for the specified use of a trolley park and a station and station grounds for its traffic, and was made to aid in the construction, maintenance and accommodation of the railway, and when it ceased to be held and used for the purposes of the grant, the title reverted to the grantor, or to those who claimed under him.

"2. The deed to Stinson, given more than 4 years after the railway's deed to the church, conveyed to Putnam's grantee all right, title and interest of the grantor in the property and was a valid conveyance; if invalid as to the church claiming adverse possession, Putnam may still maintain this action to recover possession for the benefit of his grantee.

"3. Plaintiffs' cause of action did not arise until execution and delivery of the deed from the railway company to the church, and this action in ejectment was begun less than 15 years thereafter, and is not barred by the statute of limitations."

Plaintiffs first contend, as the basis of the first proposition, that 66 O. S. 1941, § 7, is the applicable statute. This section of our statute provides:

"Every corporation formed under this article, and every railroad corporation authorized to construct, operate or maintain a railroad within this state, shall be a body corporate by the name designated in its articles, shall have perpetual succession, shall have the right to sue and be sued, may have a common seal and alter the same at pleasure, and shall also have power:...

"Second. To hold real estate. To take and to hold such voluntary grants of real estate and other property...as may be made to it, to aid in the construction, maintenance and accommodation of its railroad; but the real estate received by voluntary grant shall be held and used for the purposes of such grant only.

"Third. Same. To acquire under the provisions of this article, or by purchase, all such real estate and other property ...as may be necessary for the construction, maintenance and operation of its railroad, and the stations, depot grounds, and other accommodations reasonably necessary to accomplish the objects of its incorporation; to hold and use the same, to lease or otherwise dispose of any part or parcel thereof, or to sell the same when not required for railroad uses, and no longer necessary to its use."

Plaintiffs urge that the provisions of subdivisions 2 and 3 set out above can only mean that where land is conveyed to a railroad company by voluntary grant to aid in the construction, maintenance, or operation of the railroad, such land cannot be used for any other purposes. Hence, when land so conveyed ceases to be used for the purposes specified, it then reverts to the donor, or those who hold under him. Plaintiffs then assert that, in order to give effect to both of the quoted subdivisions, a voluntary grant must be construed to mean a grant without consideration— a donation; and if, under such voluntary grant, by virtue of the statute, a railroad could acquire fee title, it would have the right to alienate the title at will,

and thus nullify the provisions of subdivision 2, supra. Upon this basis plaintiffs contend that subdivisions 2 and 3 are used in distinction to one another, subdivision 2 restricting the use of voluntary grants to the purposes specified in the grant; subdivision 3 providing for fee title where the land is taken by condemnation or purchase.

Our statute, 16 O.S. 1941 § 29, provides:

"Every estate in land which shall be granted, conveyed or demised by deed or will, shall be deemed an estate in fee simple and of inheritance, unless limited by express words."

In Marland v. Gillespie, 168 Okla. 376, 33 P. 2d 207, paragraph 1 of the syllabus states:

"Under section 9698, O. S. 1931, which provides that every estate in land conveyed shall be deemed an estate in fee simple unless limited by express words; and section 11913, O. S. 1931, which confers on railroad corporations the power to purchase title to land for right of way or other railroad purposes; and section 13713, O. S. 1931 (sec. 2, art. 22, Okla. Const.), which provides that a corporation doing business in this state shall not acquire, trade, or deal in real estate except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed, a railroad corporation has the power to acquire fee-simple title to real estate in Oklahoma for railroad purposes by voluntary conveyance."

And in the body of the opinion, we find this statement:

"We find no evidence in our statutes of an intention on the part of our Legislature to limit estates in land acquired for rights of way by voluntary conveyances unqualified by their terms."

In Cobbs v. Wiedemann et al., 170 Okla. 493, 40 P. 2d 1075, the syllabus states:

"Railway corporation acquiring land for railway purposes by voluntary deed containing no restriction or limitation on quality of estate conveyed acquired fee-simple title which, on foreclosure sale under mortgage covering land, vested in purchaser. (St. 1931.) Secs. 11907, 11913."

It thus becomes apparent that this controversy must turn upon the question of whether the deed under consideration contained any limitation or condition which prevented the vesting of an absolute fee title, and was such a limitation as to provide a condition subsequent with a right of reverter in the grantor.

In the text, Thompson on Real Property, vol. 4, §§ 2063, 2064, the general rule is stated thus:

"A declaration of the purpose for which a conveyance is made, or for which the granted land is to be used, does not render the grant conditional. Thus, a grant of land 'for a burying-place forever' will not be construed as a grant on a condition subsequent where there are no words indicating an intent that the grant shall be void if the declared purpose is not fulfilled. It is generally held that a deed which limits the use to which the land conveyed may be put does not, without more, create a conditional fee or work a forfeiture if put to another use. Where a deed to real property recites a particular use to which the property is to be put without words of forfeiture, no condition subsequent is thereby created, but the provision creates a covenant. . . .

"2064. Recitals of purpose in voluntary public grant as creating a condition.—Especially if the purpose for which the property is to be used is in its nature public and general, no condition will be implied, and possibly not even raised, by the use of words of condition, if the language of the deed does not indicate an intent that the grant is to be void if the declared purpose is not fulfilled, but rather indicates a trust to be enforced. . . ."

This rule has been followed by this court in Priddy v. School District et al., 92 Okla. 254, 219 P. 141, 39 A. L. R. 1334, where we held, in paragraphs 1, 2, 3, of the syllabus:

"1. One cardinal principle of realty law is that conditions subsequent are not to be favored or raised by inference or

implication. The law is opposed to forfeiture of estates.

"2. A grant of real property for a particular use without words of forfeiture does not create a condition subsequent, but is a covenant, and in cases of doubt as to whether a clause in a deed is a covenant or a condition subsequent, the courts of law will incline against the latter construction and will resolve the doubt in favor of a covenant.

"3. A deed will not be construed to create an estate on conditions unless the language used, by its own force, imports a condition, or unless the intention of the grantor to create a condition subsequent is clearly expressed by the terms of the deed."

Also, see Oklahoma Ry. Co. v. Severns Paving Co., 67 Okla. 206, 170 P. 216, 251 U. S. 104, 64 L. Ed. 168; Oklahoma City v. Orthwein, 258 F. 190; Shoaf v. Wright, 174 Okla. 87, 49 P. 2d 526; Mickleson v. Gypsy Oil Co., 110 Okla. 117, 238 P. 194.

We are impressed by the fact that, had Putnam contemplated the possibility of a reverter in himself, it would have been a matter of the utmost simplicity to have provided for the condition subsequent with a right of reverter by the insertion of appropriate language in the deed. The deed contains no such language, and we decline, at this late date, to read into this deed, absolute upon its face, a meaning not placed therein by the one who had the best opportunity and reason for doing so, and which, we necessarily conclude, was not so intended.

Judgment affirmed.

WELCH, C. J., and RILEY, OSBORN, DAVISON, and ARNOLD, JJ., concur. GIBSON, J., concurs in conclusion. BAYLESS and HURST, JJ., absent.