The CHOCTAW AND the CHICKASAW NATIONS, Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF LOVE COUNTY, OKLAHOMA, and Texaco, Inc., a corporation, Appellees.

No. 8416.

United States Court of Appeals Tenth Circuit.

June 6, 1966.

Submitted on brief by appellants (W. F. Semple, Tulsa, Okl., on brief).

Kenneth D. Bacon, Midwest City, Okl., for appellees.

Before MURRAH, Chief Judge, and LEWIS and BREITENSTEIN, Circuit Judges.

MURRAH, Chief Judge.

The Choctaw and Chickasaw nations sued the Board of County Commissioners of Love County, Oklahoma, to quiet their title to the mineral interests under a cemetery. This appeal is from a judgment holding that the nations have no right, title or interest in the lands and that the Board is the owner in fee simple. We affirm the judgment.

The stipulated facts are that by patent deed executed in 1915 and approved by the Secretary of Interior, the Choctaw and Chickasaw nations " * * * granted and conveyed * * * unto the * * * County Commissioners, their successors and assigns, forever, all right, title and interest of the Choctaw and Chickasaw nations in the described lands containing seven acres more or less * * * in trust for the use of the local community for cemetery purposes only * * * *". The conveyance was pursuant to and reads upon an Act of Congress approved June 30, 1913, 38 Statutes 77–96, which provides in part that " * * * where any cemetery now exists within the lands of the Five Civilized Tribes, said land within said cemetery * * * shall be transferred by the Secretary of Interior * * * for cemetery purposes only, under such terms, conditions, and regulations as he may prescribe." Since the day of the conveyance, the record title to the tract in question has remained in the Commissioners and has been and is being used for cemetery purposes. The land became valuable for oil and gas and both the nations and the Board of County Commissioners have executed separate oil and gas leases covering the tract. Both leases are concededly owned by Texaco, Inc. The cemetery tract is a part of two producing oil and gas units operated by Texaco, and the oil and gas royalties attributable to this particular tract are being held in suspense pending the outcome of this suit to try the title.

The nations take the position that since the conveyance was pursuant to federal law, the nature and extent of the estate created by such conveyance depends upon the intendment of the enabling act in the light of Congressional policy considerations.

"The construction of grants by the United States is a federal not a state question * * * and involves the consideration of state questions only in so far as it may be determined as a matter of federal law that the United States has impliedly adopted and assented to a state rule of construction as applicable to its conveyances." United States v. State of Oregon, 295 U.S. 1, 28, 55 S.Ct. 610, 621, 79 L.Ed. 1267. The nature of the disposition of Indian lands under the guardianship of the United States is a matter of the intention of the grantor and " * * * if its intention be not otherwise shown, it will be taken to have assented that its conveyance should be construed and given effect in this particular according to the law of the State in which the land lies." State of Oklahoma v. State of Texas, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771; see also United States v. Oklahoma Gas & Electric Co., 318 U.S. 206, 209, 63 S.Ct. 534, 87 L.Ed. 716.

The nations do not contend that the deed was not in conformity with the enabling act nor that the federal act or the deed should be construed inconsistently with the apposite rules of property in Oklahoma. They do contend, however, that when the patent deed is construed in the light of the Congressional intend-

ment and in accordance with applicable rules of property in Oklahoma, the Board never acquired any right, title or interest to the oil and gas and other minerals under the cemetery, thus the nations are the absolute owners of the minerals subject only to their oil and gas lease.

The statutory law of Oklahoma provides that "Every estate in land which shall be granted, conveyed or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words." 16 O.S. § 29. Making application of this statutory canon of construction as applied in Oklahoma case law, the trial court was of the view that the mere recital in a deed that the land is "for cemetery purposes only" does not operate to reserve the mineral rights; that to reserve a right or limit the estate conveyed, appropriate language must be used to clearly show such an intent.

■ Oklahoma undoubtedly follows the generally accepted rule of property that the mere expression of the purpose for which the property is to be used will not in and of itself suffice to limit the estate conveyed. The strong presumption against forfeiture or divestiture requires that limiting language be unequivocally clear. See Priddy v. School Dist. No. 78, 92 Okl. 254, 219 P. 141, 39 A.L.R. 1334; Stinson v. Oklahoma Ry. Co., 190 Okl. 624, 126 P.2d 260, quoting Thompson on Real Property, Vol. 4, §§ 2063, 2064; McClain et al. v. Oklahoma City et al., 192 Okl. 4, 133 P.2d 198; Langston City et al. v. Gustin et al., 191 Okl. 93, 127 P. 2d 197; Midkiff v. Castle & Cooke, Inc., 368 P.2d 887; A.L.I. Restatement of Property §§ 44–45; 19 Am.Jur., Estates, §§ 36, 71, 73; 14 Am.Jur.2d, Cemeteries, §§ 24, 720. The rule has been specifically applied to grants for burial purposes only, i. e. see Sapper v. Mathers, 286 Pa. 364, 133 A. 565, 47 A.L.R. 1172; Board of Commissioners of Mahoning County v. Young, 6 Cir., 59 F. 96; Wright v. Morgan, 191 U.S. 55, 24 S.Ct. 6, 48 L.Ed. 89; and see Lindauer v. Hill, Okl., 262 P.2d 697, quoting 47 A.L.R. 1174. And, the taking of oil and gas from beneath property conveyed for public purposes has been deemed not inconsistent with the purposes recited in the deed. See Phillips Gas and Oil Company v. Lingenfelter, 262 Pa. 500, 105 A. 888, 5 A.L.R. 1495; McClain et al. v. Oklahoma City et al., supra.

■ Without contending against this long established rule of property, appellants take the position that Congress authorized the Secretary of Interior to grant or convey the cemetery lands for cemetery purposes only and this being the extent of the estate authorized to be granted, the deed must be so construed. The nations distinguish their deed from the so-called "purpose clause" cases which merely recite the purposes for which the land is conveyed. They point to the deliberate use of the word "only" both in the Congressional Act and the statutory deed and argue that the word is intended to be used synonymously with "solely" and "exclusively"; that as thus used it operates to limit the estate granted and to prohibit the use of the cemetery lands for any purpose whatsoever save and except the one purpose stated in the Congressional Act and deed. They also cite and rely upon those railroad right-of-way cases which convey an estate "so long as" and "during the time that", i. e. see Oklahoma, City v. Local Federal Savings and Loan Assn., 192 Okl. 188, 134 P.2d 565; St. Louis-San Francisco Railway Co. v. Walter, 10 Cir., 305 F.2d 90, and cases cited; Cf. United States v. Union Pacific Railroad Co., 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693. But, these cases turn on a determinable fee with automatic reversion upon abandonment or cessation of the purpose for which the right-of-way was granted. They do not support the nations' theory that the mineral estate never passed with the deed.

In further support of their theory the nations emphasize the distinction between the words of limitation in the granting clause and similar expressions in the habendum clause of a deed, i. e. see Marshall v. Standard Oil Co. of California, 17 Cal.App.2d 19, 61 P.2d 520.

They cite and rely upon Hopkins v. Grimshaw, 165 U.S. 342, 17 S.Ct. 401, 41 L.Ed. 739, involving a deed in trust for burial purposes not unlike our deed. In that case the burial ground was abandoned, and the society-grantee had been dissolved. The court there held that upon the abandonment of the burial ground for the purpose for which it was conveyed, the grantor's heirs were entitled to the land by way of a resulting trust. But, the court significantly held that the trustees took an estate in fee subject to the forfeiture upon abandonment of the purpose for which it was granted. See also Wright v. Morgan, supra, where the Congressional Act enabled the city to purchase public lands "to be held and used for a burial place for said city and vicinity". The city conveyed a part of the land to the Bishop of a church with an habendum that the land was to be used for burial purposes. The Bishop of the church later conveyed a part of the land to another person who subdivided it as an addition to the City. The heirs of the grantor sued in ejectment. The legal title of the city was held to be absolute "in view of the extreme unwillingness of courts to admit the existence of a common-law condition even when the word 'condition' is used".

As we view the case, it comes to this. Congress was undoubtedly empowered to authorize the nations, with approval of the Secretary of Interior, to transfer these cemetery lands in fee simple, determinable fee, or to grant a mere easement. Congress did authorize the transfer of the existing cemetery lands for cemetery purposes only under regulations to be prescribed by the Secretary. The Secretary caused the nations to transfer the tract in question by patent deed granting and conveying to the County Commissioners of Love County, forever, all their right, title and interest in trust for cemetery purposes only. When the enabling act was passed and the deed executed, it was the general rule of property that a conveyance of all right, title and interest in and to designated property for a stated purpose was construed to convey a fee simple title. The purpose clause was generally regarded as directory only, not a limitation on the estate conveyed. It certainly cannot be said that at the time of this conveyance either Congress or the Secretary of Interior was unfamiliar with this prevailing rule. If Congress had intended to authorize the transfer of a limited fee only, we think it would have expressed itself by the use of appropriate language consistent with the prevailing rules of property then and now, as indeed it did in contemporary legislation.[1]

It is noteworthy that the Congress was dealing with cemetery lands and its concern was the perpetuation of the purpose for which the lands were being used at the time of the transfer. The most that can be said for the nations' contentions is that this deed comes within the purview of the Grimshaw case under which the nations could assert appropriate equitable remedies upon abandonment of the cemetery or upon its being put to uses inconsistent with the purpose for which it was granted. Since there has been no abandonment of the purpose for which it was transferred and the taking of the oil and gas beneath the surface is not inconsistent with its use for cemetery purposes, the equitable principles of Grimshaw are presently inapplicable.

In these circumstances we conclude that the nations transferred an estate in fee simple in trust for cemetery purposes only.

The judgment is affirmed.

---

1. See the Act of February 19, 1912, 37 Statutes 67, to provide for the sale of the surface of segregated coal and asphalt lands of the Choctaw and Chickasaw Nations which reads in pertinent part that "The surface herein referred to shall include the entire estate save the coal and asphalt reserved."