## CHUNG K. AI *v.* C. T. BAILEY, COMMISSIONER OF PUBLIC LANDS OF THE TERRITORY OF HAWAII, AND HAWI MILL AND PLANTATION COMPANY, LIMITED, AN HAWAIIAN CORPORATION.

### No. 1776.

ARGUED SEPTEMBER 21, 1927.     DECIDED NOVEMBER 2, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

The Territory leased to the plaintiff certain lands on the Island of Hawaii and later, by letter addressed to the plaintiff, attempted to withdraw from the operation of the lease two certain portions of the demised property for the purpose of conveying them to a third party, the Hawi Mill and Plantation Company, Limited, in exchange for two other pieces of land which the Territory desired to acquire, one for use as a site for a school and the other for use as an aviation field. The clause of the lease under which the withdrawal was attempted reads as follows: "It is mutually agreed that at any time or

times during the term of this lease the land demised, or any part or parts thereof, may at the option of the lessor, on behalf of the Territory of Hawaii, or any person or persons, corporation or corporations, be withdrawn from the operation of this lease for homestead or settlement purposes, or for storing, conserving, transporting and conveying water for any purpose, or for reclamation purposes, or for forestry purposes, or for telephone, telegraph, electric power, railway or roadway purposes, or for any public purpose, or for sale for any purpose for which land may be sold under the provisions of section 73 of the Hawaiian Organic Act as now or hereafter amended." The question submitted to us under the statute upon these agreed facts is whether the withdrawal is authorized by the terms of the lease.

The claim of the Territory is based upon the statement in the lease that the lands demised or portions thereof may be withdrawn at any time "for any public purpose". It is true that the expression "any public purpose" is susceptible of meaning and including any purpose beneficial to the public or serving the public, such as, for example, in order to sell the same and to place the proceeds in the public treasury to meet ordinary appropriations lawfully made by the legislature, or to give in exchange for other lands which can be in turn leased to better financial advantage than were the lands actually leased or even in order to lease the withdrawn portions to another lessee upon better financial terms. The expression in question is susceptible of this meaning when standing by itself or in connection with the remainder of a text aiding and supporting that meaning. Read, however, in connection with the remaining language of the lease under consideration, we think that the requirements of English, common sense and common experience do not permit

of this construction, but indicate on the contrary that the expression was used as meaning that the lands to be withdrawn were to be themselves devoted to a public use and were not to be given away in exchange for other lands which in turn would be devoted to the public use. The doctrine *noscitur a sociis* applies. The provision is that the land may be withdrawn for homestead purposes or for settlement purposes. This ordinarily would be taken to mean that the land itself was to be cut up into homesteads. The provision is further that the land may be. withdrawn for storing water, which means for storing water thereon; for conserving water, that is, for conserving water thereon; for transporting and conveying water, that is, to build flumes and ditches thereon for the purpose of conveying water; for reclamation purposes, that is, to be filled in if marshy or otherwise insanitary; for forestry purposes, that is, to grow forests thereon; and to the same effect throughout the list of public uses expressly named in the clause. The additional expression "or for any public purpose" is to be understood, because of its connection with the other purposes expressly named, as being. purposes for which the very land withdrawn is to be used and to which it is to be devoted. Again, if the expression "or for any public purpose" had the broad meaning attributed to it by the attorney general, it would be unnecessary to add after it the further provision that the land might be withdrawn "for sale for any purpose for which land may be sold under the provisions of section 73 of the Hawaiian Organic Act as now or hereafter amended",— for such a sale authorized by the Organic Act would clearly be in itself a public purpose within that broad meaning. It is significant, too, that, while the power to withdraw "for sale" was expressly granted, the power to withdraw "for exchange" was not named. In other

words, we understand the expressions used in the provision in question, describing the purposes for which lands once solemnly leased can be withdrawn at the option of the lessor alone, to have been inserted and used with a restrictive intention,—that is to say, in order to name certain definite purposes for which the lands can be withdrawn while at the same time leaving the leased property immune from withdrawal for any and all other purposes. In order to sustain the position of the Territory it would be necessary to construe the expression "for any public purpose" in the broadest possible way and to attribute to it a meaning which would leave it possible for the Territory or its representatives to withdraw the land entirely at its option and without any restriction whatever, for it would always be assumed that the acts of the public officers were for the public benefit and therefore for a public purpose. Leases of public lands, like leases of private lands, are entered into by lessees because they think they see an opportunity for deriving some beneficial profit to themselves from the temporary use of the property, but ordinarily, in order to secure this end the land is desired only if it can be definitely assured to the lessee for a stated period. The right of the lessor to withdraw the whole or any part of the lands at any time purely at his or its option is not ordinarily granted and is not freely to be inferred unless the language used clearly requires it. Had it been the intention of the parties to this instrument to grant to the Territory the very large powers of withdrawal now claimed, much simpler and more direct language could have been used to express that intention and understanding.

Nor is there, as we think, any conflict in this respect between the provision of the lease and the provision of section 73 of the Organic Act, subsection (d), under the

authority of which this term was included in the lease. The Organic Act reads: "The land or any part thereof so leased, may at any time during the term of the lease be withdrawn from the operation thereof for homestead or public purposes, in which case the rent reserved shall be reduced in proportion to the value of the part so withdrawn". The authority granted is to withdraw leased lands for homestead purposes or for public purposes. Upon the same course of reasoning this means, we think, that the lands may be withdrawn when it is desired to devote them to homestead purposes or to devote them to public purposes. It does not include the power to withdraw them in order that with their proceeds other lands can be acquired which in turn will be cut up into homesteads or used for other public purposes.

Judgment accordingly.

*I. M. Stainback* (*Huber, Kemp & Stainback* on the briefs) for plaintiff.

*W. B. Lymer,* Attorney General (also on the brief), for the commissioner of public lands.

### CONCURRING OPINION OF BANKS, J.

It is the contention of the land commissoner that inasmuch as the land sought to be withdrawn is to be used by the government for the acquisition of other lands upon which public improvements are to be placed it therefore follows that the withdrawal is for a *public purpose.* In a certain sense this is true. But is it the reasonable meaning of the withdrawal clause? The language conferring this power to withdraw is ambiguous. If construed broadly it may be given the meaning contended for by the commissioner. A more conservative construction would be that before the power of withdrawal can be exercised it must be intended to erect the public improvements upon the land withdrawn.

It is also contended by the land commissioner that because the lessor is the Territory, and therefore in a sense sovereign, the more liberal construction should be adopted. I cannot take this view. When the Territory undertakes to lease public lands it does not act in its sovereign capacity but as a private landowner and is on the same footing as other landowners. This question is fully discussed, and I think correctly decided, in *Boston Molasses Co.* v. *Commonwealth,* 193 Mass. 387, 389. In its opinion the Massachusetts court quotes from *People* v. *Stephens,* 71 N. Y. 527, 549, as follows: "The State, in all its contracts and dealings with individuals, must be adjudged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign and another for the subject; but, when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, although an action may not lie against the sovereign for a breach of the contract, whenever the contract, in any form, comes before the courts, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor." See also *Hall* v. *Wisconsin,* 103 U. S. 5, 11.

Instead of construing the power to withdraw land from the lease liberally in favor of the exercise of the power by the lessor a contrary rule under generally recognized canons of construing leases should be adopted. There are, of course, equally well recognized exceptions to this rule but the instant case does not fall within any of them. The general rule is thus stated in 35 C. J., p. 1181, §478: "It has frequently been laid down that leases are to be most strongly construed against the lessor,

and that if there is any doubt and uncertainty as to the meaning of a lease, it is to be construed most strongly in favor of the lessee." The reason for the rule is thus stated in, the same section: "The rule requiring strict construction against the lessor is ordinarily based upon the facts that the lease is regarded as the grant of the lessor, which should be most strongly construed against him, and that it is usually prepared by him, and generally applies where the lessor has prepared the lease or is regarded as having employed the ambiguous words." See also *Coney* v. *Dowsett,* 3 Haw. 685.

It seems only just, therefore, that the lessee rather than the lessor should be given the benefit of any reasonable doubt as to the meaning of the withdrawal clause. The land was conveyed to him for a term of fifteen years. Under a reasonable interpretation of the withdrawal clause he had a right to believe that as long as he performed the covenants imposed upon him his possession would remain undisturbed unless the Territory required all or a portion of the land upon which to erect public improvements. Let us suppose the commissioner had desired to withdraw the land in question in order to exchange it for other land the Territory wished to use for *homestead* purposes, would it be a fair construction of the lease to say that he could do so? Certainly not and for the reason that the natural and rational meaning of the withdrawal clause is that the land cannot be withdrawn for *homesteads* unless the *homesteads* are to be established on the land itself. The power to withdraw for public purposes is subject to the same limitation. Any other construction of the lease would subject the lessee's tenure to a hazard not within the reasonable meaning of the withdrawal clause of the lease. For these reasons I concur in the conclusion of the majority.