KAPIOLANI MATERNITY AND GYNECO-LOGICAL HOSPITAL v. WODE-HOUSE et al.

No. 7026.

Circuit Court of Appeals, Ninth Circuit.

April 10, 1934.

794

E. C. Peters, of Honolulu, T. H., and Orrin K. McMurray, of Berkeley, Cal., for appellant.

A. G. M. Robertson, A. L. Castle, A. Withington, and J. G. Anthony, all of Honolulu, T. H., for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal taken from the decision of the Supreme Court of the territory of Hawaii rendered upon an agreed case submitted to that court in pursuance of sections 2371 to 2374, inclusive, of Revised Laws of Hawaii 1925. The parties to the agreement are the Kapiolani Maternity and Gynecological Hospital and Ernest H. Wodehouse and James L. P. Robinson, executors of the will of Mary E. Foster, deceased. The facts agreed upon by the parties may be briefly summarized as follows:

The Kapiolani Maternity and Gynecological Hospital, which will be hereinafter referred to as the "Maternity Hospital" or as "the appellant," is a corporation established under the laws of Hawaii for the purpose of benevolence and charity and for the special object of providing a maternity home where Hawaiian women could receive proper care and treatment during the period of childbirth. This corporation has no capital stock and no provisions for dividends or profits, its funds being mainly derived from public and private charity, and all property received by it from any source it holds and will hold in trust to be devoted to the object of sustaining a maternity hospital, improving its accommodations, and diminishing its expenses. Mary E. Foster, the testatrix, died December 19, 1930, leaving a last will and testament dated December 22, 1926, and a codicil thereto dated January 17, 1930. The will contained a bequest of the sum of $50,000 to the appellant under its former name, Kapiolani Maternity Home, as follows: "Ninth. I give, devise and bequeath the sum of Fifty Thousand Dollars ($50,000.00), unto the Maternity Hospital known as Kapiolani Maternity Home, of Honolulu, Territory of Hawaii. It is made a condition of this bequest that said Maternity Hospital shall establish within one year after payment of this bequest and maintain at least five (5) beds at said Maternity Hospital. These beds shall be maintained either in wards or in private rooms but shall be for the use of women in need of the medical and other care administered by the said Maternity Hospital and who are unable to pay for such care. It is made an express condition of this bequest that no woman in need of care who is unable to pay for such care shall be refused the use of one of such beds unless all of such beds are already occupied by patients for whose care the said Maternity Hospital is making no charge; and preference shall be shown women with Native Hawaiian blood in their veins. If during my lifetime, and after the execution of this will, I shall give to said Maternity Hospital said sum of Fifty Thousand Dollars ($50,000.00), or any part thereof, such sum so given shall be considered an advancement and the amount thereby bequeathed shall be reduced by the amount of such advancement."

After the execution of the will and before the execution of the codicil, to wit, on Febru-

ary 15, 1929, testatrix gave the hospital the sum of $25,000. The circumstances surrounding this gift are stated in the agreed facts as follows: "The trustees created a building fund, the funds of which were to be devoted exclusively to the erection and completion of the proposed new maternity hospital on its new site at the corner of Punahou and Bingham Streets, opened an account in a local bank to the credit of said building fund and deposited therein all moneys possessed by it and available therefor and such additional moneys as it was able to borrow upon the security of its real property; that on, towit, August 20, 1929, it entered into a building contract with a local contractor for the erection and completion of a maternity hospital building on its new site at the corner of Punahou and Bingham Streets for the agreed price of one hundred fifty-three thousand eight hundred forty-six dollars ninety cents ($153,846.90), which amount was approximately twenty-five thousand dollars ($25,000) in excess of the amount then to the credit of said building fund, and thereafter through its trustees approached and solicited divers persons, including the testatrix, Mary E. Foster, to contribute to said building fund, explaining to them and her that the Kapiolani Maternity Home was trying to raise sufficient funds to meet the cost of the erection and completion of a new maternity hospital building on its new site on the corner of Punahou and Bingham Streets and stating what had been done by the trustees up to that time as hereinbefore alleged; that on, towit, February 15, 1929, the testatrix, Mary E. Foster, in response to the solicitations made of her, with full knowledge of all the facts and well knowing that any moneys that she might contribute to such building fund were for the exclusive purpose of defraying the cost and expenses of the erection and completion of the new maternity hospital building at the new site and would be used exclusively for that purpose and not for the establishment and/or maintenance of beds or for other furniture, fixtures or equipment to be used in said maternity hospital, made a gift to the Kapiolani Maternity and Gynecological Hospital of the sum of twenty-five thousand dollars ($25,-000.00) accompanying her gift with a letter over the signature of E. H. Wodehouse, Esq., as agent for the said Mary E. Foster, addressed to Mary H. Hons, Treasurer of the Kapiolani Maternity Home, containing the following statement: 'I have been instructed by Mrs. Mary E. Foster to hand you the inclosed check No. 363 on The Bank of Bishop & Co., Ltd., payable to the Treasurer of the Kapiolani Maternity Home, in the sum of $25,000.00, this amount being her contribution to the fund being raised by the Home for the completion of the new maternity hospital'; that the said sum of twenty-five thousand dollars ($25,000.00) so contributed by the said testatrix, Mary E. Foster, was deposited in said bank by the trustees of the Kapiolani Maternity Home and Gynecological Hospital to the credit of the building fund so created as aforesaid and with other funds therein were checked out and used exclusively by it in defraying the expenses and the cost of erection and completion of said new maternity hospital building and for no other purpose; that the new maternity hospital was completed on, towit, March 26, 1929, and the furniture, fixtures and equipment, including beds, of the former hospital at No. 1538 Beretania Street then removed thereto, since which time the maternity hospital so previously maintained and conducted at No. 1538 Beretania Street has been abandoned and the Kapiolani Maternity and Gynecological Hospital ever since last named date has conducted and maintained and is now conducting and maintaining the new maternity hospital at its new site on the corner of Punahou and Bingham Streets for the purpose of benevolence and charity and for the special object of providing a maternity home where the Hawaiian women can obtain proper care and treatment during the period of childbirth; that the Kapiolani Maternity and Gynecological Hospital, in token of its appreciation of the gift of the testatrix Mary E. Foster, during the period of construction of the new maternity hospital building, named the west wing of the upper floor the 'Mary E. Foster Wing' and fittingly and permanently inscribed upon the arch of the corridor leading to said wing the words 'Mary E. Foster.' "

The original will of the testatrix contained a residuary clause devising and bequeathing all of the residue of her property, after the payment of some twenty-six legacies, in equal shares to the Maternity Hospital and to the Leahi Home for "the establishment of a *permanent* fund for the charitable use of the said Maternity Hospital and of the said Leahi Home in their benevolent work, as a perpetual memorial to my father," etc. (Italics ours.) The codicil to the will executed after the gift of the $25,000 made no reference to the gift nor to the bequest of the $50,000 in the ninth clause of the will. However, the codicil made many changes in the will and specifically revoked the residuary clause and in lieu thereof gave the residue to the executors to hold the same in trust for her sisters

796

as long as any one of them lived and thereafter the remainder to their children, etc. The agreement of facts states:

"That neither the sum of fifty thousand dollars ($50,000.00) nor any lesser sum is adequate to establish within one year after the payment of the sum of fifty thousand dollars ($50,000.00) or any lesser sum and perpetually maintain at least five beds at the Kapiolani Maternity and Gynecological Hospital conducted by the Kapiolani Maternity and Gynecological Hospital at the corner of Punahou and Bingham Streets, Honolulu, Hawaii, either in wards or in private rooms for the use of women in need of medical and other care administered by the Kapiolani Maternity and Gynecological Hospital and who are unable to pay for such care subject to the condition that no one woman in need of care, who is unable to pay for such care, shall be refused the use of one of such beds unless all of such beds are already occupied by patients for whose care the said Kapiolani Maternity and Gynecological Hospital is making no charge.

"That notwithstanding the inadequacy of the sum of fifty thousand dollars ($50,000.-00) or any less sum to establish and perpetually maintain five beds pursuant to and in conformity with the provisions of article nine of the will of the testatrix of December 22, 1926, the Kapiolani Maternity and Gynecological Hospital is willing to accept said legacy in either the full amount, or should the court hold that the gift of the testatrix of February 15, 1929, was an 'advancement' within the meaning of that term as employed in said ninth article of said will, in the reduced amount upon the condition that it shall establish and perpetually maintain, pursuant to and in conformity with the provisions of said ninth article of said will, as many beds as the legacy received by it may be reasonably adequate to establish and maintain, not exceeding five beds, and should the amount of said legacy at any time be increased by accretions or contributions for that purpose or otherwise to an amount reasonably adequate to establish and perpetually maintain additional beds pursuant to and in conformity with the provisions of said ninth article of said will, it will forthwith establish and perpetually maintain additional beds to the number of five beds pursuant to and in conformity with the provisions of the said ninth article of the said will of said testatrix of December 22, 1926."

■ The first point of difference between the parties, as stated in the agreement to submit the controversy, is that the executors contend that the gift of $25,000 made February 15, 1929, is an advancement within the meaning of that term as employed in the ninth article of the will of December 22, 1926, and that the amount of the $50,000 bequest should be reduced by that amount, while the Maternity Hospital contends that the gift of $25,000 was not an advancement and that the bequest should not be reduced by that amount. The question of whether or not the gift of $25,000 should be treated as an advancement within the meaning of that term as used in the will, or more appropriately, as an ademption by satisfaction pro tanto, is a question of the intention of the donor at the time of making the gift. The rule with reference to this matter of intention as affecting ademption is thus stated by the author of Page on Wills, vol. 2, § 1342: "Whether a gift to a legatee operates as an ademption or not, depends upon the actual intention of the testator, as communicated to the legatee, or as would be inferred by the legatee *from the circumstances under which the gift is made,* if he acted as a reasonable man. The doctrine of ademption by satisfaction is intended, primarily, to give effect to the intention of the testator; and not to secure the interests of other beneficiaries as against the wishes of the testator."

In Richards v. Humphreys, 15 Pick. (32 Mass.) 133, it was held that the intention of the testator at the time of payment determines the question of ademption. To the same effect, see Jones v. Mason, 26 Va. (5 Rand.) 577, 16 Am. Dec. 761; Louisville Trust Co. v. Southern Baptist Theo. Sem., 148 Ky. 711, 147 S. W. 431; Grogan v. Ashe, 156 N. C. 286, 72 S. E. 372; Justis v. Justis, 99 Md. 69, 57 A. 23, 24; Kramer v. Kramer (C. C. A.) 201 F. 248; Cowles v. Cowles, 56 Conn. 240, 13 A. 414; In re Brown's Estate, 139 Iowa, 219, 117 N. W. 260.

■ Although it is clear that it was the intention of the testatrix at the time she made the will that when she should subsequently make a gift of all or a portion of the sum of $50,000 that such gift should be deducted from the amount of the bequest, this declaration of intention can be overcome by clear evidence that the gift when subsequently made was at that time not intended to be in partial satisfaction of the bequest. The provision of the will above quoted would be evidence of the intention of the donor at the time of the gift which can be overcome by other evidence bearing upon the question of her intention in making the gift.

There are probative facts in the stipulation which strongly tend to overcome the effect of the statement in the will of the in-

tention of the testatrix that subsequent gifts of a portion of "said sum" should be treated as an advancement. These facts above stated include a statement of the circumstances under which the gift was made; a declaration of the purpose of the testatrix in making the gift, and the provisions of the codicil subsequently made. Other evidence not included in the stipulation might be even more persuasive.

If the testatrix intended the $25,000 paid by her for the erection of a building should be considered an advance on account of the legacy theretofore made by her for the establishing of free hospital beds probably something would have been said by her on the subject of the $50,000 legacy at the time of making the gift. The stipulation of facts is entirely silent with reference to the motives of the testatrix in revoking the residuary clause in favor of the hospital by the execution of the codicil. She no doubt disclosed her purpose in that regard to the draftsman of the codicil. These observations as to the intent of the testatrix at the time she made the gift and as to probable evidence with reference thereto are all made for the purpose of making it clear that the stipulation of facts fails to state an essential and ultimate fact, that is, her intent as to ademption in making the gift at the time it was made. The court is therefore required to draw an inference of fact from the evidentiary facts stated in the agreement and thus determine an ultimate fact as to her intent, and upon the ultimate fact so determined adjudicate the rights of the parties. This determination of fact and of law is the usual and customary duty of courts and upon the stipulation of facts entered into herein such determination would be readily reached in a litigated case involving these legal and factual issues. The legal issues can be determined without action where the essential ultimate facts are stipulated, but not otherwise.

It has been held by the Supreme Court of Hawaii in Butterfield v. Bon, 12 Hawaii, 337, that the proper course to pursue in such case is to dismiss the proceeding without prejudice because of the failure to agree upon a material fact. The court there said: "But if we are called upon to decide whether there was a breach of the condition to insure then the agreed statement of facts should be dismissed for that is a fact in dispute and we are not called on to pass upon evidence but upon the law applied to facts agreed. The parties must agree as to this fact or else produce their proofs in a proper case before a court in equity."

This is in accord with the general rule under statutes similar, if not identical, to that of Hawaii, in New York, and California, for the submission of a controversy without action.

In Marx v. Brogan, 188 N. Y. 431, 81 N. E. 231, 11 Ann. Cas. 145, the Court of Appeals of New York considered the question as to the power and duty of a court to draw inferences and conclusions of fact from the stipulated facts. We quote extensively from this case because it reviews the legislative and judicial history of the provisions in the legislation of the state of New York which was apparently the parent legislation of all the statutes enacted, including those in Hawaii, permitting the submission of a controversy upon an agreed statement of facts without action:

"If the submitted case presented a pure question of law, the Supreme Court had power to decide it, and we are charged with the duty of reviewing the correctness of that decision; but, if the question of law could not be decided without first disposing of conflicting or equivocal inferences of fact, the court below was without jurisdiction, the judgment herein must be reversed and the proceeding dismissed. The submission of controversies for judicial decision without litigation is of statutory birth. It seems to have had its origin in this state in the report of the commissioners appointed to revise our practice and procedure under the Constitution of 1846. That report contained a section which the Legislature adopted as part of the Code of Procedure of 1848, in which it was first designated as section 325, and later as section 372. It is now section 1279 of the Code of Civil Procedure.

"The portion of the present section which is material to the controversy at bar is substantially identical with the original enactment. It provides that 'the parties to a question in difference, which might be the subject of an action, being of full age, may agree upon a case, containing a statement of the facts, upon which the controversy depends, and may present a written submission thereof to a court of record, which would have jurisdiction of an action, brought for the same cause.' In reporting the original section as one of the amendments to our procedure, the commissioners said: 'This provision, it is believed, will be useful in many cases where a question as to a legal right exists between fair and honorable men, there being no dispute about the facts.' The language of the statute, supplemented by the sentence quoted from the report of the commissioners, leaves

no doubt as to the nature and scope of the proceeding described in the statute. It was not intended to embrace issues where any dispute of fact was involved, but was to be confined to causes depending wholly upon questions of law. That is the plain and unmistakable import of the words used in the statute. That was clearly the understanding of the commissioners who reported this amendment to our law of procedure, and that has been the view entertained by our courts since it has been a part of the two Codes referred to. Neilson v. Com. Mut. Ins. Co., 3 Duer [10 N. Y. Super. Ct.] 455; Clark v. Wise, 46 N. Y. 612; Fearing v. Irwin, 55 N. Y. 486. It seems obvious, therefore, that whenever it clearly appears that a submitted controversy necessarily involves the duty of drawing inferences from inconclusive, equivocal or evidentiary facts before a legal conclusion can be formed, it follows as a logical sequence that the issue is one which must be presented and decided in an action, and not in this statutory proceeding. This view is strongly reinforced by the decisions of other states where our statute has served as a model. While it cannot be said that these foreign decisions are absolutely uniform as to the jurisdictional powers of the courts in such proceedings, it may safely be affirmed that under statutes like ours there has been no substantial deviation from the view that the courts have no power to draw inferences of fact as distinguished from inferences of law. Goodrich v. City of Detroit, 12 Mich. 279; Powers v. Provident Institute for Savings, 122 Mass. 443; Pray v. Burbank, 11 N. H. 290; Burr v. Des Moines Nav. & R. Co., 1 Wall. 99, 102, 17 L. Ed. 561; 1 Ency. Pl. & Pr. 393; Mayhew v. Durfee, 138 Mass. 584; Hysinger v. Baltzell, 3 Gill & J. (Md.) 159; Vansant v. Roberts, 3 Md. 119; Sawyer v. Corse, 17 Grat. (Va.) 230, 99 Am. Dec. 445. In Massachusetts and Maryland, under statutes which in their essential features are identical with our own, and in cases directly involving the question, the courts have laid down what we regard as the correct rule. In Mayhew v. Durfee, supra, the Supreme Judicial Court of Massachusetts states it as follows: 'When an action at law is submitted upon agreed facts either to the Superior Court or to this court, only questions of law are submitted, and neither court can draw inferences of fact from the facts agreed, unless, as matter of law, they are necessary inferences.' In Maryland, in the case of Hysinger v. Baltzell, supra, the rule is stated to be that the court can 'make no inferences unless they be of law or are such as are clear, undeniable deductions from the statements

agreed on. It is competent for the jury to draw inferences from testimony submitted to them, but that power is not extended to the court when required to act on a case stated where nothing can be supplied by implication.' In the light of the history of our statute and the decisions which bear upon its scope and meaning, a short review of the facts submitted in the controversy at bar will disclose that they are not of such a conclusive character as to obviate or exclude the necessity of drawing inferences of fact essential to a complete determination of the controversy. On the contrary, the facts submitted are purely evidentiary in their nature, leaving the essential, decisive, or ultimate fact to be decided by the court. * * *

"When the ultimate as well as the evidentiary facts upon which a legal conclusion depends are all agreed upon and properly submitted, a case falls within the purview of section 1279 of the Code of Civil Procedure. But, when the facts agreed upon and submitted give rise to other inferences of fact which may be conflicting, then resort must be had to an action for the adjudication of the matters in difference."

In Dreiser v. John Lane Co., 183 App. Div. 773, 171 N. Y. S. 605, the court declined to pass upon the question of whether a book, the contents of which were presented to the court by the stipulation, was obscene, because that was a question of fact and the stipulation submitting the controversy for determination was therefore insufficient, and the proceedings were dismissed. This decision reviews the New York authorities upon the subject of the submission of a controversy upon an agreed statement of facts and arrives at the conclusion that, although the contents of the book were submitted to the court for determination by the court as to their character, the issue submitted was one of fact and not of law, and that there was no jurisdiction to pass upon the factual question.

Justice Cardozo, in Rushing v. Commercial Casualty Ins. Co., 251 N. Y. 302, 167 N. E. 450, 451, directed the reversal of the judgment of the Supreme Court and the dismissal of the proceedings without prejudice wherein the submission of a controversy on an agreed statement of facts in which the insured sought to charge the insurer with liability on the policy indemnifying a householder against claims for damages where the submission did not state whether or not an explanation or excuse was possible where notice of accident was not given within the time required by the policy. It was held that the stipulation of facts must cover that fact in order to justify

a determination of the issue between the parties as to the liability of the insurance company where no notice was given. Speaking of the stipulation Justice Cardozo said: "Its silence and obscurity permit, if they do not require, a dismissal without prejudice rather than a judgment on the merits."

Justice Field, later of the Supreme Court, sitting in the Supreme Court of California in Crandall v. Amador County, 20 Cal. 72, under the practice act of California permitting the submission of a controversy by stipulation (section 377 of the Practice Act of 1851), held that the "action of the District Court upon the agreed case was irregular and unauthorized. The consideration of the court was restricted to the facts admitted, and its judgment could not be based upon any other facts which it may have supposed the plaintiff could establish." Citing Neilson v. Commercial Mutual Ins. Co., 10 N. Y. Super. Ct. (3 Duer) 463, a New York case. The decision thus cited by Justice Field stated: "When a controversy is submitted under the Code, the court, at general term, can only determine the questions of law arising upon the facts agreed upon by the parties, and the only question of law arising upon the statement of facts in this case, in our opinion, is the question of construction, which we have considered and decided."

In Holmes v. Wallace, 46 Pa. 266, the Supreme Court of Pennsylvania declined to settle disputed facts under a similar law for the submission of a pending case upon an agreed statement of facts and said: "We must decline the task of settling the disputed facts in this case stated from the mass of testimony before us; or facts in any case stated. It is essential to a case stated that the facts be agreed upon, so that the court may have nothing to do but pronounce the law arising out of them. It was said in Diehl v. Ihrie, 3 Whart. [Pa.] 143, 'It ought to be like a special verdict; to contain facts, and not the mere evidence of facts.' 'It is like a special verdict:' Cook v. Shrauder, 1 Casey [25 Pa.] 312, and consequently should be certain."

The same action was taken by the Supreme Court of Pennsylvania in Union Savings Bank v. Fife, 101 Pa. 388, where it was said: "A case stated is a substitute for and in the nature of a special verdict, and is subject to the same rules. It must find facts and not the evidence."

It follows that if the intention of the testator at the time of making the gift as to ademption is a necessary fact to the determination of the controversy, the controversy cannot be determined without an agreement upon that fact and it would be entirely improper for the court to proceed to determine the factual issue upon a case submitted on an agreed statement of facts.

In view of the importance of this jurisdictional question and the fact that it was not considered by the Supreme Court of Hawaii or in the briefs or argument, after a study of the case after submission we submitted to counsel four questions, the first two of which are as follows:

1. Is not the intention of the testatrix at the time of making the $25,000 gift decisive as to whether or not the $50,000 bequest is adeemed pro tanto?

2. Assuming that the question of intention at the time of the gift is essential to a determination of the rights of the parties, must not the case be dismissed for failure to stipulate upon this fact?

To the first question the answer of the appellees is in the negative. The appellant answers that it concedes that ademption depends upon the intention of the testatrix in making the gift; indeed, appellant's claim to the payment of the entire legacy is based upon this contention. The appellant's answer to the second question is as follows:

"The question is asked by the court in its order, whether this submission should not be dismissed for failure to stipulate an essential or ultimate fact, towit: the intention of the testatrix at the time she made the gift of $25,000 to the hospital for building purposes.

"We believe the matter to be one of local law, and that under the local law of Hawaii as established by the long continued practice of the bar and the courts, upon submission of a controversy under Rev. Laws, §§ 2371–2374, the court to which the submission is made, has the power to infer ultimate facts from other facts submitted, where they are uncontradicted, and are sufficient to enable the court to make the inference. * * *

"The essential facts submitted in this case are not of a parol character. The claims and arguments of both parties rest upon written instruments, namely, the will of the testatrix, the letter of Mrs. Foster's agent, accompanying her gift of $25,000, and the codicil to the will. The court is asked to decide upon the meaning of these instruments. The appellants have claimed, and still claim, that the gift of $25,000, stated in the letter written by her agent to the hospital to be 'her contribution to the fund being raised by the Home for the completion of the new maternity hospital' did not adeem pro tanto the lega-

cy for $50,000, since that legacy was given for a special purpose and on special terms, namely, the establishment of hospital beds, within one year from payment, whilst the latter devoted the $25,000 to a quite different purpose, the completion of a building, thus falling without the clause in the ninth section of the will concerning advancements. On the other hand, the appellees claim that there was an ademption because of the advancement clause. The sole point to be determined is, what did the testatrix mean? Only the court is competent to make this conclusion.

"The submission in effect is a substitute for a bill in equity by the legatee against the executor to compel the payment of the legacy. It is necessary to construe the will and the other writings to determine whether the appellant should be entitled to $50,000 or $25,000, and whether, if it be entitled to either, it should receive the sum upon condition, or free from condition, or upon trust."

In support of appellant's contention it cites the following cases: Harris v. Judd, 3 Hawaii, 421, 426; Thurston v. Allen, 8 Hawaii, 392, 400, 401; Walker v. Bickerton, 14 Hawaii, 492, 494; Fitchie v. Brown, 18 Hawaii, 52, 69, 70; Paiko v. Boeynaems, 22 Hawaii, 233, 235, 238; Von Holt v. Williamson, 23 Hawaii, 201, 205; Estate of Hartwell, 23 Hawaii, 213, 217, 219; Lidgate v. Danford, 23 Hawaii, 317, 324; Scott v. Lucas, 23 Hawaii, 338, 344; Bickerton v. Bickerton, 24 Hawaii, 388, 391; Estate of Deering, 29 Hawaii, 854, 856, 862, 864.

In regard to these cases it is sufficient to say that the question of the meaning and interpretation of a will is a question of law notwithstanding the fact that the cardinal purpose of a will is to ascertain the intention of the testator. This intention is not to be ascertained from any independent inquiry. Extrinsic evidence is only admissible for the purpose of placing the court in a position to more satisfactorily determine the intention of the testator as expressed in the will.

What we have said with reference to the interpretation of a will is equally applicable to the interpretation of a lease or deed. Counsel cite numerous decisions of the Supreme Court of Hawaii dealing with such cases: Boyd v. Pico, 1 Hawaii, 398, 400; Campbell v. Akana, 3 Hawaii, 571, 572, 573; Cross v. Hawaiian Sugar Co., 12 Hawaii, 415; Oahu Ry. and Land Co. v. Ewa Plantation Co., 15 Hawaii, 318, 322; Richards v. Ontai, 20 Hawaii, 335, 337, 342; Ai v. Bailey, 30 Hawaii, 210, 213, 214; H. C. & D. Co. v. City and County of Honolulu, 30 Hawaii, 871; Simerson v. Simerson, 20 Hawaii, 57, 59, 60;

Naopala v. Hina, 24 Hawaii, 341, 343, 344, 345. But they are not in point on the question involved in the case at bar. We repeat that we are not dealing here with the intention of the parties or of the testator as manifested by a will or a conveyance, but with her intention in making a payment of money. What was said and done at the time of the payment of the money and in soliciting the same are of primary importance in determining that ultimate question of fact.

The appellees insist that the provision of the will which we have quoted above with reference to future advancement is definite and decisive of the question at issue. This is incorrect. The declaration of the testatrix in the will is entitled to great weight in determining her intention when she later gave the $25,000 and must be enforced in the absence of evidence of a subsequent change of intention. Page on Wills (2d Ed.) § 1342; Adams v. Cowen, 177 U. S. 471, 20 S. Ct. 668, 44 L. Ed. 851. The author of Page on Wills states in section 1343: " * * * if the will provides that amounts paid to the legatee are to be credited upon the legacy, and the legatee claims that a subsequent payment was intended as a gift and not as an advancement, such legatee has the burden of proving such fact, and it must be proved by clear and convincing evidence."

The provision in the will with reference to advancements, the change in the will by the codicil, the written declaration made on behalf of the testatrix at the time she made the gift, are all evidence tending to show her intention, but the inference from this and other probative evidence is one of fact and not of law. It is true, as counsel contends, that it is very difficult in many cases to distinguish between probative and ultimate facts. It is also difficult in some cases to determine whether or not the conclusion sought is one of fact or of law. We have recently had an illustration of that difficulty in this court. U. S. v. Great Northern Ry. Co., 68 F.(2d) 610, decided January 29, 1934.

■ The appellant urges us to proceed to a determination of the controversy and to draw the necessary inference of intention from the stipulated facts. We would be glad to do this if it were proper, but our duty in the matter not only depends upon the power of the Supreme Court of Hawaii to entertain the controversy, but also our power to review the decision of that tribunal. That we have power to consider the question presented to us on the record, if it is a question of law, is very clear. In so far as it involves a determination of an issue of fact, however, our

right of review depends on the nature of the controversy. In a legal action involving issues of fact we have no power to review the finding of a jury or of a judge acting as a jury if there is sufficient substantial evidence to sustain the verdict or decision upon an issue of fact, notwithstanding the fact that there might be an overwhelming weight of evidence on behalf of the appellant and notwithstanding the fact that upon the record we might be disposed to take the opposite view as to the fact in issue to that taken by the trial judge or the jury. This is the general rule applicable to appeals in federal practice, and is applicable to appeals from the Supreme Court of Hawaii. See 28 USCA § 225, and also a recent decision interpreting the statute which allows appeals from decisions of the Supreme Court of Hawaii and of Puerto Rico. Porto Rico Ry. Light & Power Co. v. Miranda (C. C. A.) 62 F.(2d) 479. In a case in equity we have power to consider the weight and effect of the evidence, but even in such cases we are largely influenced by the decision of the trial judge, particularly where the witnesses appear in court. We would be very reluctant to overturn a decision of the Supreme Court of Hawaii upon a question of fact where we have the power to do so, and it is because of this reluctance that we have called attention to the fact that what we are asked to do in this instance is to determine a fact, namely, the intent with which a woman now deceased made a payment of money or caused a payment of money to be made to persons in Hawaii. We would not hesitate to pass upon this question of fact if it were our duty so to do, but as we understand our duty it is to decline to pass upon a question of fact in an agreed case and to call to the attention of the Supreme Court of Hawaii that the issue involved is one of fact. Their own decision which we have cited holds, in accordance with those of other jurisdictions, that an agreed case for determination must be one in which the ultimate facts are stipulated. This is quite apparent from the language of the Hawaiian statute, § 2371 Rev. Laws of Hawaii 1925, which requires that the parties "agree upon a case containing the facts upon which a controversy depends and present a submission of the same to the supreme court." While a similar statute has been in force in New York for almost 100 years, and in California for 83 years, the record shows very few submissions of controversies upon an agreed statement of facts, undoubtedly for the reason that in relatively few cases are the parties willing to agree up-

on the facts and confine their dispute to a pure question of law.

We make these observations in response to the very earnest argument of the parties herein, and particularly of the appellant, that we ought to take a more advanced and enlightened view concerning the submission of controversies by stipulation than has been done in some of the earlier cases bearing upon this subject. The difficulty with this suggestion is that it involves putting into the statute a provision not incorporated therein and vesting in the courts a power not confided to them by the Legislature. The very fact that such controversies can be submitted in the first instance to the highest court of the jurisdiction in which the controversy arises, is sufficient to emphasize the necessity of confining the inquiry to the legal rather than the factual questions, particularly as in some jurisdictions the highest court is by constitution expressly prohibited from passing upon facts in a controversy. The position of counsel in this matter is predicated largely upon the wide jurisdiction of the Supreme Court of Hawaii in the determination of questions of fact as well as of law. Appellant furnishes us with a history of the Supreme Court of Hawaii and makes the following observations in reference thereto:

"From this review of the history of the Supreme Court of Hawaii, it is apparent that the court has the power and duty, conferred by constitutional provisions and by legislative acts, to draw inferences of facts from written records, and to substitute its own findings for those of the trial court to an extent not possible where the constitutive act creating a court confines its power of review to questions of law alone. It would seem that a court having such extensive powers should exercise them in favor of a statutory substitute for litigation. * * *

"If it were necessary to infer facts from other facts, in order to sustain the practice followed in the present case, we believe that the history of the jurisdiction of the Hawaiian courts indicates that they possess that power. We believe, however, that since the question of testator's intention rests sufficiently upon written documents, that it is not absolutely necessary to refer to the question as to the power to infer facts from facts in evidence. * * *

"Whatever powers other courts may have, we believe that the legislative history of the Hawaiian courts proves that there is conferred upon the Supreme Court of the Territory a power of reviewing facts, whether on

appeal or on submission of controversies, to an extent that is not usually 'possessed by courts of review."

The all-sufficient answer to the suggestion of appellant is that the fact finding power of the court is not invoked when acting under the statute of Hawaii for the submission of a controversy upon an agreed statement of facts. Rev. Laws, §§ 2371–2374, supra. The decision of the Supreme Court of Hawaii construing that statute is to that effect. In the case at bar the Supreme Court of Hawaii has not given any indication of its purpose to determine a question of fact. On this branch of the subject an appropriate order would be to remand the matter to the Supreme Court of Hawaii with permission to the parties to amend their stipulation of facts by including therein an agreement as to the intent of the testatrix at the time the $25,000 was paid by her to the appellant; otherwise, this branch of the case to be dismissed without prejudice to the rights of the parties to the $25,000.

■■ There is, however, an agreement between the parties that the appellant is entitled to the sum of $25,000. As to this item there is a controversy which the parties seek to present to the court upon the agreed case, namely, the question of whether or not the executors could refuse to pay the legacy of $50,000 or the lesser sum of $25,000 unless the hospital accepts the same upon the condition subsequent that it will establish and maintain five beds at the said maternity hospital pursuant to and in conformity with the provisions of article ninth of the will of the testatrix. The Maternity Hospital contends that it is entitled to receive the full amount of the legacy of $50,000 or the reduced sum of $25,000 upon the condition that it will establish as many beds as the legacy received by it may be reasonably adequate to establish and maintain, not exceeding five, until the amount of the legacy shall at any time be increased by accretions or contributions for that purpose or otherwise, to an amount reasonably adequate to establish and perpetually maintain additional beds pursuant to and in conformity with the provisions of the will. The appellees state in their brief that: "The only question between the parties was the amount that the hospital was entitled to demand of the executors. * * * The hospital could have brought suit for this legacy against the executors and that in fact is the only question in issue." They assert that: "The question whether the legacy under the Ninth Clause of Mrs. Foster's will is a trust for the purpose of charity or a legacy with a condition subse-

quent is prematurely presented under the agreed statement and the doctrine of cy pres does not arise." In their additional brief they say: "Whatever may be the decision of this court upon the condition attached to the gift, the main object of this submission is to determine what sum the Hospital is entitled to." Nevertheless, the issue is stated by the executors in the agreed statement as follows: "That the Kapiolani Maternity and Gynecological Hospital is not entitled to receive the legacy of fifty thousand dollars ($50,000) or any lesser sum unless it accepts the same upon the conditions attached to said bequest, to-wit, to establish and maintain five beds at said maternity hospital pursuant to and in conformity with the provisions of Article Ninth of the will of the testatrix dated December 22, 1926."

As the right of the hospital to demand and receive $25,000 is conceded, it would seem that the only question ripe for decision is whether or not the executors are entitled to demand a statement from the hospital that the gift is upon a condition subsequent, or other condition, as a prerequisite to the delivery of the legacy. The Supreme Court of Hawaii held that there was no trust established, that the legacy was for the general purposes of the hospital, and that the will imposed a condition subsequent upon the bequest that the beneficiary establish and maintain at least five free beds.

The condition stated in the will merely defined the use of the legacy and not the character of the title to the legacy. "In construing the will it is to be remembered that such conditions [subsequent] are not favored. The intention to create them must clearly appear." Sherman v. Richmond Hose Co., 230 N. Y. 462, 130 N. E. 613, 615; citing Rose v. Hawley, 118 N. Y. 502, 23 N. E. 904. It is pointed out in the above case (Sherman v. Richmond, supra) and in Corporation of the Chamber of Commerce v. Bennett, 143 Misc. 513, 257 N. Y. S. 2, 8, that without a gift over after the breach, a condition subsequent attached to a gift of personal property could not become operative. There is no gift over in the will of the testatrix. Even in the case of real estate courts are reluctant to interpret conveyances as establishing conditions subsequent. Wright v. Morgan, 191 U. S. 55, 24 S. Ct. 6, 48 L. Ed. 89. In Tiffany on Real Property (2d Ed.) § 79, it is said: "The law is favorable to the vesting of estates, and adverse to their destruction, and consequently a stipulation in a conveyance or a devise will be construed, if possible, not to create a condition. The courts will by preference construe

language as creating a covenant, a trust, or an equitable charge."

The Supreme Court of California, in Victoria Hospital Ass'n v. All Persons, 169 Cal. 455, 147 P. 124, 127, considered the effect of the use of the words "upon the express condition" that the property should be used for the benevolent purposes of the grantee hospital. It was held that although in California the words "on condition that" were sufficient to create a conditional estate, the other provisions in the deed indicated a different purpose.

Some courts are disposed to hold that a gift to a charitable corporation for some of its benevolent purposes on condition that it be so used constitutes a trust and not a conditional title to the property. In re Richardson, 56 L. J. (N. S.) Ch. 784; Stanley v. Colt, 72 U. S. (5 Wall.) 119, 18 L. Ed. 502; Wright v. Wilkin, 2 B. & S. 232, 252, 121 Eng. Rep. 1060, 1067. The appellant questions whether or not an estate upon condition can be created in personal property citing Williams on Real Property (18th Ed.) p. 426; Gray, Rule Against Perpetuities, § 78; Re Swan, L. R. (1915), 1 Ch. 829, 833; Sherman v. Richmond Hose Co., 230 N. Y. 462, 130 N. E. 613, and other authorities. But it is unnecessary to go so far in this case. It is sufficient to say that the testatrix manifests no intention in her will to create an estate upon a condition subsequent if we construe the will in the light of the well-established reluctance of the law to draw such a conclusion from the will in the absence of a clear and unmistakable intention to create a condition subsequent with its attribute of forfeiture for breach of condition.

It is assumed by the hospital that its obligation is to establish and perpetually maintain five free beds, or such a lesser number as the income from the sum bequeathed will maintain. The Supreme Court of Hawaii acted upon this assumption and declared that the obligation to establish and perpetually maintain five free beds was a condition subsequent to the enjoyment of the gift and in effect that whenever the hospital ceased to maintain five free beds, its right to retain the legacy terminated. If the obligation to establish and maintain five free beds were a condition subsequent, then of necessity it would follow that the five free beds would have to be perpetually maintained. However, as we have seen, the language in the will was insufficient to create a condition subsequent and we find no basis in the will for the assumption that the testatrix required the hospital to perpetually maintain five free beds. There is no adequate basis for reading into the ninth clause of the will a word which was not incorporated therein and which was apparently studiously omitted, for the testatrix in the residuary clause of the will gave a fund "for the establishment of a *permanent* fund for the charitable use of said Maternity Hospital and of the said Leahi Home in their benevolent work as a *perpetual* memorial to my father James R. Robinson * * * ." The duty of the hospital is to establish and maintain five free beds and not any lesser number but the sum given is inadequate to maintain five free beds without using the principal sum bequeathed. The dominant purpose of the testatrix is unmistakably clear, to establish five free beds and to maintain them. There is no restriction imposed by the will upon the use of the principal for that purpose. It is not spoken of in the will as a trust fund to be invested, nor is its investment suggested, nor is anything said concerning the use of the income therefrom. The only basis for the assumption that the free beds are to be perpetually maintained is the fact that the term "free bed" is usually applied to an endowed bed, but any inference deducible from the customary use of the term "free bed" is entirely overcome by the fact that no such intention is expressed by the testatrix and such an interpretation would wholly defeat her clearly expressed and dominant purpose. If by reason of the requirement that the beds be established within one year there is a slight indication that the testatrix expected the hospital to raise other funds to supplement her bequest, that intention, if it existed, is too intangible to be given effect in the face of her expressed wish that her bequest be used to "establish and maintain" five free beds.

It is sufficient for the purposes of this case to hold that the testatrix did not evince an intention to create a condition subsequent with a gift over to take effect upon breach of the condition. The stipulation shows that the hospital is an institution with very limited resources and that the affixing to the legacy of a forfeiture for breach of a condition subsequent would wholly defeat the dominant purpose of the testatrix. Having determined that $25,000 of the legacy is due and payable and that the executors cannot exact an agreement from the hospital that the legacy is accepted upon a condition subsequent, and that the principal of the legacy can be expended to maintain five free beds, we have decided all questions in the controversy now ripe for decision. The executors are not in a position to

submit any further questions as to the use' of the legacy and manifestly do not seek to do so.

The decree of the Supreme Court of Hawaii is reversed, with instructions to permit the parties to amend the stipulation of facts to include an agreement as to the intent of the testatrix with reference to ademption at the time of her gift of $25,000 and in default thereof to dismiss that branch of the case without prejudice. As to the balance of the legacy ($25,000) the decree will direct its immediate payment by the executors to the hospital.