## SELTENRICH et al. v. TOWN OF FAIRBANKS.

No. 6829.

United States District Court
D. Alaska. Fourth Division. Fairbanks.

Oct. 3, 1951.

Robert A. Parrish and George B. Mc-Nabb, Jr., of Fairbanks, Alaska, for plaintiffs.

Mike Stepovich, Jr., and J. A. Hurley, of Fairbanks, Alaska, for defendant.

PRATT, District Judge.

This is an action to enjoin, pendente lite, the City of Fairbanks from abandoning its airport known as Weeks Field.

Plaintiffs support their motion for such injunction by their verified complaint. The defendant in resistance to the motion filed an affidavit herein of Irving H. Call, City Manager, of Fairbanks, together with a plat or map, alleged by Mr. Call in his affidavit to show the areas in dispute in this case and the various properties involved.

The plaintiffs allege that Weeks Field lies partly within and partly without the City of Fairbanks, Alaska, and that the ground for the same was acquired by gift and otherwise for the purpose of constructing and maintaining and operating an airport.

## I

In paragraph 4 of their complaint, the plaintiffs allege: That upon the 23rd day of August, 1927, the town of Fairbanks accepted a gift of 5.28 acres for airport purposes from Stacia T. and Paul Rickert. Citation is then made to Exhibit "A" attached to the complaint. Exhibit "A" is a copy of the minutes of the regular meeting of the common council of the City of Fairbanks, Alaska, held upon the 23rd day of August, 1927. The only thing in said minutes pertaining to an airport is as fol-

lows: "A Deed from Stacia and Paul Rickert giving the City, for airport purposes, 5.28 acres of land from their homestead was read and it was moved by Kennedy and seconded by Gilcher that the gift be accepted. Carried." Nowhere in the plaintiffs' complaint or the Exhibits thereto, or the map of Mr. Call, is it shown where said 5.28 acres lie. It is not alleged in the complaint that those acres are any part of Weeks Field, nor, in fact, of any place. In regard to another parcel of land, it is carefully alleged in paragraph 5 of the complaint that it forms a part of Weeks Field. It thus appears that said 5.28 acres are not a part of Weeks Field and that the plaintiffs designedly omitted to make any statement as to its location.

There is no copy attached to the complaint of the deed mentioned in said Exhibit "A" and it is not alleged that the deed contained any condition or restriction as to the use of the ground.

As the burden of proof is upon the plaintiffs, the failure to allege that said 5.28 acres were a part of Weeks Field makes said acreage immaterial to this case. It in no way shows any right in plaintiffs to commence this action and it may be disregarded hereinafter as surplusage.

## II

(A) In paragraph 5 of plaintiffs' complaint it is alleged that upon the 11th day of September, 1929, Paul J. Rickert and Stacia T. Rickert conveyed to the Territory of Alaska, "for airport purposes" 60.5 acres. It is further alleged that the land described in said deed is a part of Weeks Field and that a copy thereof is attached to the complaint as Exhibit "B".

Exhibit "B" is an ordinary deed without a single condition or restriction in it. It makes an absolute conveyance to the Territory of Alaska. It was filed for record upon the 13th day of September, 1929, in the office of the Recorder of the Fairbanks Recording District wherein the town of Fairbanks and the ground mentioned in the deed lie. It does not contain any condition or restriction. Irving H. Call's affidavit states that the land described in said Exhibit "B" attached to the complaint is not

in Weeks Field. His map supports his affidavit and shows the Rickert 60.5 acre conveyance to be outside Weeks Field, though one corner of said Rickert 60.5 acres touches the southern boundary of Weeks Field.

As the plaintiffs have the burden of proof and Mr. Call's affidavit and map, at least even up the showings of plaintiffs and defendants, there is a failure of plaintiffs to sustain such burden of proof.

(B) In paragraph 7 of plaintiffs' complaint, it is alleged that on the 23rd day of June, 1945, the Territory of Alaska conveyed to the Town of Fairbanks, Alaska, the same 60.5 acres of land which were formerly conveyed by the Deed shown in Exhibit "B" of the complaint. A copy of the deed of June 23, 1945, is attached to the complaint and marked Exhibit "D". The plaintiffs allege that the Town of Fairbanks, in Resolution No. 21, dated January 29, 1950, and in Resolution No. 22, acknowledged that the City had acquired said land for airport purposes.

Exhibit "D" (the deed) is an ordinary deed without any condition or restriction set forth. It recites that it is made in conformity with Chapter 30, Session Laws of Alaska, 1945. Said Chapter 30 is an Act of the Legislature directing the Governor to execute a deed conveying to the Town of Fairbanks, Alaska, the aforesaid 60.5 acres. Chapter 30 S.L.A. 45 makes no conditions or restrictions and the Governor in making the deed shown as Exhibit "D" executed his authority exactly as authorized in said Chapter 30 by a deed which conveyed the property without conditions or restrictions.

Said Resolution 21 merely states that the City of Fairbanks purchased approximately "370 acres of land, being portions of the Rickert and Day homesteads for airport purposes". There is no mention in said resolution of the 60.5 acres of land conveyed as mentioned above. The map of Mr. Call shows 3 tracts of land out of the Rickert homestead to have been acquired by the City, the smallest of which was the 60.5 acres above mentioned. Thus Resolution 21 in no way places any condition or restriction on the City.

Resolution No. 22 recites: "Whereas the City of Fairbanks did purchase a portion of the Rickert homestead for airport purposes". It does not state anything further about the Rickert homestead property, and in no way does it indicate that the 60.5 acres was the portion mentioned in said Resolution No. 22.

Further the map presented by Mr. Call, which he stated under oath showed all of the property encompassed by the boundaries of Weeks Field and also the tracts purchased by the City and from whom, shows that Weeks Field boundaries do not encompass said 60.5 acres, although there is one point where the corner of said 60.5 acres touches the side line of Weeks Field.

As said 60.5 acres is not a part of Weeks Field, and as the deed conveying said 60.5 acres to the City of Fairbanks contained no conditions or restrictions, it is certain that such conveyance did not create any trust on the City to hold and use the land therein conveyed for airplane purposes. Said conveyance of 60.5 acres shows no right in the plaintiffs to compel the City of Fairbanks to refrain from abandoning said Weeks Field as an airport.

That the execution by the Territory of Alaska of the deed conveying said 60.5 acres to the City of Fairbanks superseded any prior oral statements of the parties as to the use the property should be put to, if there were any such statements or agreements, is borne out by the following authorities:

In Miller v. Village of Brookville, 1949, 152 Ohio St. 217, 89 N.E.2d 85, 86, 15 A.L.R.2d 967, land was conveyed to the Village for park purposes by Elgar and Elizabeth Weaver. The deed recited that the village was required to use the land in perpetuity for a park and pleasure ground purposes. The deed further provided that "the foregoing restrictions shall be enforceable by injunction by the Grantors, their heirs or assigns, or any citizen of the community who may be interested in the welfare of the park." The deed contained no forfeiture or reversion clause.

It was held "But these provisions fall far short of constituting a reversion

clause or of making the fee a determinable one.

\* \* \* \* \* \*

"Clearly in the instant case a fee simple title was conveyed to the village." The Court further quotes, with approval, from City of Cleveland v. Herron, 102 Ohio St. 218, 131 N.E. 489, 491: "It seems quite well settled that mere failure of consideration, whether partial or total, when unmingled with fraud or bad faith, is not sufficient in equity to warrant the rescission of an executed contract; and, further, that in the absence of fraud a deed for real estate will not be set aside as for a failure of consideration on the sole ground that the promises and agreements which entered into its execution, and which were to be performed in the future, have not been performed. So equity will not interfere ordinarily where a grantor has seen fit to accept a promise on the part of his grantee for the performance of certain acts, without specifically providing that failure to perform shall be a condition of forfeiture, or in some way affect the validity of the deed, or entitle him to a reconveyance."

The Court further quotes in the case, In re Copps Chapel Methodist Episcopal Church, 120 Ohio St. 309, 166 N.E. 218, as follows: "Where a quitclaim deed, for valuable consideration, conveys to trustees of an unincorporated church associatin certain real property, 'To have and to hold \* \* \* unto the said grantees and their successors \* \* \* so long as said lot is held and used for church purposes,' without any provision for forfeiture or reversion, such statement is not a condition or limitation of the grant. Since the deed contains no provision for reversion or forfeiture, all of the estate of the grantor was conveyed to the grantees. Hence a church building affixed to the realty does not pass to the heirs of the grantors when such lot and building cease to be used for church purposes."

In Briggs v. City of Grand Rapids, 1932, 261 Mich. 11, 245 N.W. 555, the City purchased ground for $6,000 and the deed contained the following recital: "this purchase of land is for park purposes." It did not contain a reverter clause or any other express restriction of the City's use of the property. After 20 years use of the land as a park the city took proceedings to sell 4 acres thereof, whereupon the grantor in the deed brought suit to cancel the sale of the 4 acres alleging that he had made a concession in the price for which he sold the land to the City by reason of the fact that it was to be used for a park named after him. The Court dismissed the bill on the ground that there was no reverter clause, but merely a declaration of the use, which was to be made of the ground.

In Board of Education v. Brophy, 1919, 90 N.J.Eq. 57, 106 A. 32, 33, the deed conveyed land to the board. Immediately following the description of the land was the following: "Which said premises are hereby conveyed to and for the purpose of having erected thereon a district schoolhouse"; and after the covenant of warranty the following appeared: "to and for the use of having erected thereon and maintained for the use of said district, a schoolhouse and for playground for the scholars of said district and for no other purpose whatsoever."

An heir of the grantor claimed the tract had been abandoned as a schoolhouse and playground.

The Court stated that conditions subsequent are always construed strictly, and will never work a forfeiture unless they are clearly expressed in unequivocal terms or necessarily implied; that if it be doubtful whether a clause in a deed be a covenant or a condition, the courts will incline against the latter construction; and that words in a deed, not in form either a covenant or a condition would be construed as a covenant rather than a condition.

The Court then held: "I am inclined to the view that the original grant to the school district is a grant in fee simple without condition or limitation; the grantor merely expressing the purpose which it was his desire or wish that the property should be used for.

300

"It is to be observed that in the present grant no forfeiture is prescribed, and both the grant and the habendum are unconditional".

In Sharp v. City of Guthrie, Okl., 145 P. 764, 765, a patent contained the following: "To have and to hold and maintain the same for the sole and separate use, benefit and purpose of a public park for public uses and no other." On rehearing in 49 Okl. 213, 152 P. at page 403, the Court held that the City took a fee-simple title, free from any trust or condition, and with power of alienation.

In Wright v. Morgan, 191 U.S. 55, 24 S.Ct. 6, 7, 48 L.Ed. 89, it was held that where a deed provided that a city could appropriate and use land "for a public park or grounds" it probably meant no more than to explain the motive for a sale under the circumstances at the minimum price; that in view of the strong disinclination of the courts to annex conditions or restrictions in the absence of a clear expression of such intent, it would seem to be the duty of the Court to hold that no such condition or restriction is intended.

In Ward v. Klamath County, 108 Or. 574, 218 P. 927, it was held that where the deed provided that a courthouse should be built upon the land, but did not provide for a reverter, it gave an indefeasible title.

In 19 Am.J. page 525, Notes 3 & 4, it states: "While the use of technical words appropriate to the creation of a condition or of an express provision for re-entry and forfeiture is not an absolute pre-requisite to the creation of a condition subsequent, the failure to use them, or to use other language clearly indicating the creation of such condition subsequent, is an important consideration as indicating the absence of an intention that the estate conveyed shall be restricted by such a condition."

Section 65, page 527 states: "It is a well-settled rule that conditions tending to destroy estates, such as conditions subsequent, are not favored in law. They are strictly construed. Accordingly, no provision will be interpreted to create such a condition if the language will bear any other reasonable interpretations, or unless the language, used unequivocally, indicates an intention upon the part of the grantor or devisor to that effect and plainly admits of such construction.

In Toole v. Christ Church, Tex.Civ.App. 1946, 141 S.W.2d 720 on page 722, it states: "The deed in question recites and acknowledges the receipt of a valuable consideration, the sum of $110, as a consideration for the conveyance of said property to the named trustees and their successors in office. There are no words of condition, reverter or right of re-entry in the deed and there are no conditions in the deed with the exception of the provision in the habendum clause to the effect that the property was conveyed 'in trust however that said land, etc., shall be held, used and reserved for the benefit of the said congregation of Christ Church Houston as a cemetery, and for no other purpose.'"

The Court held: "It has long been the settled law in this state that where a deed contains apt language denoting the grant of an unconditional fee estate in land, other language contained in the instrument which denotes that the land was granted for a particular purpose is not regarded as implying that the grant is conditional."

"It is further held that a deed of conveyance does not create a condition subsequent where no words of condition, reverter, or right of re-entry are used in the conveyance."

In Watts v. City of Houston, Tex.Civ. App. 1946, 196 S.W.2d 553, 566 the deed recited that the property conveyed should be used for a market place. There was no provision for forfeiture and reversion in case that property was used contrary to said condition. It was held: "Further, it is the general rule that the mere recital of a use or purpose in a grant of land, together with a prohibition of the use of the land for other purposes, is usually held to create a covenant and not a condition subsequent when there are no words in the instrument conveying the land for certain purposes relating to re-entry or forfeiture, but simply a declaration that the land conveyed

shall not be used for any other purpose than that specified, and when the instrument contains other apt language denoting the grant of an unconditional fee in the land.

\* \* \* \* \* \*

"Since the above facts are undisputed in the record and are therefore questions of law determinable by the court, we think that no error was committed by the trial court in granting appellee's motion for an instructed verdict and in refusing to submit issues of fact to the jury."

In Chapter 7, Session Laws of Alaska 1931, the Legislature, in granting additional powers to the common council of municipal corporations provided as follows: "Twentieth: To acquire by purchase or otherwise, and to hold real estate and other property, or any interest therein, and to sell, lease or otherwise dispose of such real estate and other property, or interest therein, whether now owned and held or hereafter acquired including property acquired or *held for any public use or devoted thereto,* when in the judgment of the city council the same shall no longer be required for municipal purposes".

The power of the City Council above mentioned remains unchanged in the Compiled Laws of Alaska 1933 as a part of Section 2383 on page 489, and in Section 16–1–35 page 196 Alaska Compiled Laws Annotated A.C.L.A. The same is true in Chapter 61 S.L.A. '51, Where a paragraph was added at the end of the then twentieth subdivision of Section 16–1–35 page 196.

■ Inasmuch as the municipal common council has, at all times since 1931, had the power to sell, lease or otherwise dispose of real estate, which was owned by the City or held by the City for any public use or devoted thereto, Fairbanks could have legally disposed of any land to which such trust attached. There has been no proof in this case that the airport involved was held in trust for any public use, or devoted thereto. Nevertheless in a proper case the statute above mentioned would be authority for the City Council to abandon Weeks Field inasmuch as an abandonment is a lesser included power than the power to sell for which the statute specifically provides. Abandoning the use of property as an airport might also be classified as otherwise disposing of real estate and within the powers given by said twentieth subdivision.

Chapter 27 S.L.A. '45 amends the last sentence of the first paragraph of said twentieth subdivision of Section 2383 A.C. L.A. '33 thereby giving the common council of municipal corporations the right to acquire and to sell, lease or dispose thereof land available as sites for the installation and operation thereon of new industries which will benefit the civic welfare of the municipality. This additional power to the common council to encourage the installation and operation of new industries which will benefit the civic welfare of the municipality, is just another condition which did influence the City in abandoning an unnecessary airport and using the ground thereof for such new industries. Such a course was not only justified by the statutes of Alaska above mentioned, but was necessary for the prosperity of the people of the Fairbanks municipality and the Fairbanks School District.

### III

In paragraph 7 of plaintiffs' complaint, it alleged that the Rickerts, in executing the deed to the Territory of Alaska, conveying 60.5 acres, made an error in the metes and bounds description so that the deed actually conveyed 2 acres over and above said 60.5 acres. The Rickerts made a deed, a copy of which is set forth as Exhibit "C" attached to the complaint. It explains the desires of the grantors to convey the extra 2 acres to the Town of Fairbanks. However, no 2 acres are designated, so the deed is so indefinite as to be an effectual.

Inasmuch as the Territory of Alaska deeded to the City of Fairbanks, the identical property which the Rickerts conveyed to the Territory, alleged to be 60.5 acres and set forth in Exhibit "B", it becomes immaterial that said deed Exhibit "C" is invalid for indefiniteness.

### IV

In paragraph 8 of the complaint, it is alleged that the Town of Fairbanks pro-

cured two lots from one Harold Gillam, which were adjacent to the airport; that the consideration for said property was that the Town of Fairbanks granted to Harold Gillam a permanent easement to and from said airport to his property known as Lot 3 and described in said paragraph. It is stated that a copy of the conveyance, is attached to the complaint, marked Exhibit "F".

Exhibit "F" is a deed from Gillam to the Town of Fairbanks, in 1940, and not a conveyance of an easement in favor of Gillam. However, there is a recital in the deed, after the acknowledgment of the receipt of $1 consideration that "a further consideration that said party of the first part (Gillam) shall have a continuous free and unobstructive right-of-way to and from the Fairbanks Municipal Airport to Lot 3, occupied as a hangar by party of the first part as described in the deed from Stacia T. Rickert to party of the first part, dated August 16, 1940". It is not stated in the deed that the right-of-way is to Gillam and his heirs, assigns or successors in interest. It states merely, it is a right-of-way to Gillam. It does not tell where and over what property the right-of-way lies. It merely shows that it must terminate on Lot 3. It is not stated whether the right-of-way was given in writing or orally. There is no statement as to the length of time the right-of-way shall continue.

It therefore appears that the said alleged right-of-way is so vague and indefinite as to be invalid as a right-of-way. Above all, there is no evidence to show that the right-of-way was upon and over Weeks Field. The map produced by Irving Call and before the Court on this hearing shows a Barnett Street which if extended a short distance would reach Gillam's lot.

If a valid right-of-way, in writing, and executed by proper and authorized parties had been given Gillam, the right-of-way would nevertheless have been invalid inasmuch as a right-of-way is property. It would be the sale of property, which was not ratified by a majority of qualified voters voting at a general or special election, or otherwise, at which the question of ratification of such sale was duly submitted, as required by said twentieth subdivision of Section 16–1–35 A.C.L.A.

In paragraph 9 of the complaint, it is stated that the plaintiff, the Northern Consolidated Airlines, is the owner and successor of the property owned by Gillam to-wit: Lot 3. In said paragraph, said Lot 3 is descibed by metes and bounds. It nowhere states that said Northern Consolidated Airlines is the owner of the above mentioned right-of-way.

Plaintiffs' complaint was framed on the theory that Weeks Field was given to the Town of Fairbanks for the specific purpose of being used as an airport; that a trust arose in favor of the general public residing in Fairbanks, Alaska, and in the vicinity of the airfield; that the City of Fairbanks is the trustee for the said public and that the trustee cannot abandon his trust; that the plainiffs have a property interest in the use of said airfield.

Inasmuch as this motion for an injunction was submitted on the part of plaintiffs upon their verified complaint and upon the part of defendant, upon the affidavit of Irving H. Call and the map presented by him, there was a definite conflict in regard to the Rickert property Exhibit "B" being a part of Weeks Field. The complaint alleged that it was such part. Mr. Call stated definitely that it was not a part of Weeks Field and presented his map which shows it was not a part of Weeks Field. As the burden of proof is upon the plaintiffs, they have failed to show by a preponderance of the evidence that any of the Rickert property was within the boundaries of Weeks Field, they have also failed to show any right in them to have said Weeks Field used as an airport.

For the reasons hereinbefore mentioned, it is held that plaintiffs have not shown any right to an injunction, pendente lite, and the motion for the same should be denied. An order to that effect should be signed.